## James S. Hancock et al. versus John Hancock.

A testator who held $20,138 in the three per cent. stock of the United States, made the following bequests: " I give and devise to my daughter M. S., at this time single, $600 per annum, to be regularly paid to her in quarterly payments out of my three per cent. stocks, during her life, and should she marry and have issue, then, at her decease, *the same* to go to her children and the children of B. H. equally." — " All the rest and residue of my estate, I give unto my grandchildren, the children of my daughters, M. S. and B. H., that is to say, to such of them as may be living at my decease, in equal portions." After the death of the testator, a large portion of the stock was paid off by the United States, and the fund in the hands of the executor thus became larger than was sufficient to raise the sum of $600 annually. It was *held*, that the words, *the same*, in the first clause, did not refer to the annuity, but to the stock, and therefore that the stock did not pass by virtue of the latter clause, to the residuary legatees, subject to the annuity; and that it was the intention of the testator, that the stock should remain in the hands of his executor during the life of M. S., and the annuity be paid over to her, and that at her decease, the stock itself should be distributed among all the grandchildren *who should be living at that time.*

This was a bill in equity, brought by James S. and Thomas Hancock against John Hancock, the executor of the will of James Scott, Mary Butler, a widow, and George Hancock and others, children of John and Betsy Hancock.

The bill alleges, that on April 12, 1809, James Scott, of Boston, made his will, which contained the following clauses :

" Secondly, I give and devise to my daughter Mary Scott, at this time single, six hundred dollars per annum, to be

regularly paid to her in quarterly payments out of my three per cent. stocks, during her life, and should she marry and have issue, then, at her decease, the same to go to her children and the children of Betsy Hancock equally."

" Eighthly, all the rest and residue of my estate, I give unto my grandchildren, the children of my daughters Mary and Betsy, that is to say, to such of them as may be living at my decease, in equal portions, and be their number more or less."

The bill further alleges, that James Scott died before June 26, 1809, on which day his will was duly approved and allowed ; that John Hancock, who was appointed one of the executors by the will, was admitted sole executor ; that Mary Scott, now Mary Butler, is alive and has, since the making of the will, intermarried with Merrill Butler, now deceased, and that she has no issue ; that Betsy Hancock had issue, four children, at the time of the death of the testator, viz. James and Thomas Hancock, the complainants, and George and John Hancock junior, two of the respondents, and that they are the sole residuary legatees under the will ; but that since his death she has had issue, Charles L., William E., Elizabeth L., Mary L., Franklin and Washington Hancock, who were also respondents in this suit ; that, at the time of his death, James Scott held the sum of $20,000, in the three per cent. stock of the United States, and that the income of the same, being $600 per annum, was received by John Hancock, the executor, or by Mary Butler under a power of attorney from him, until October 1, 1832, on which day two thirds of the sum of $20,000, being $13,333·33, was paid over to the executor by the United States ; that the complainants have been informed, that this sum has been invested by the executor in bank stock and promissory notes with security ; and that the remainder of the sum of $20,000, being $6,666·66, will soon be paid over to the executor ; that the whole sum of $20,000 is much more than sufficient to produce and to secure to Mary Butler the income of $600 ; that the complainants are advised that, according to the tenor of the will, a sum sufficient to secure the payment of the annuity of $600 ought to be invested by the executor, for that purpose. and that the remainder of the

fund of $20,000 ought to be paid over by him to the resi-
duary legatees, James S., Thomas, George and John Han-
cock junior, who are, by virtue of the will, entitled each to
one fourth part of such residue ; that even if said principal
sum ought not to be so distributed, nevertheless that all the
income and profits thereof exceeding the sum of $600, ought
to be divided among the residuary legatees, as fast as the same
may accrue ; and that the other children of Betsy Hancock
were not born until after the decease of the testator, and are
therefore not entitled to any part thereof.

The complainants, therefore, pray that an account may be
taken of all stocks, sums of money, notes and other securities
belonging to the trust fund, and of the interest and income
thereof; that the executor may be ordered to secure the pay-
ment of the annuity to Mary Butler, by the investment of such
portion of the fund as may be sufficient for that purpose ; and
that one fourth part of the remainder of the fund may be paid
to each of the complainants. Or, if the Court should be of
opinion that the distribution of the fund should be postponed
to any future day, then the complainants pray that the annuity
of $600 may be paid to Mary Butler, and that one fourth
part of the remainder of the interest and income of the fund,
may be paid to each of the complainants. The complainants
also pray for relief generally.

The answer of John Hancock, the executor, avers that the
testator died on June 19, 1809, and that Charles L. Hancock,
one of the respondents, was born on March 6, then next fol-
lowing ; and it submits to the judgment of the Court, whether
Charles L. Hancock was or was not living at the decease of
the testator, whether James S., Thomas, George and John
Hancock junior are the sole residuary legatees, and whether
the surplus of the fund of $20,000, if the same forms any
part of the residuary estate, after investing so much thereof
as shall be sufficient to produce and secure the annuity, ought
to be now distributed to the residuary legatees. It is also al-
leged, that a large amount of personal property has been dis-
tributed among the four residuary legatees, James S., Thomas,
George and John Hancock junior.

The answer of Charles L. Hancock denies that James S.,

Thomas, George and John Hancock junior were the only issue of Betsy Hancock living at the decease of the testator ; avers that he, the respondent, was living at that time, and that he is entitled equally with them to all the real and personal estate of the testator not otherwise disposed of in the will ; and refers it to the judgment of the Court, whether the surplus of the fund of $20,000, if the same forms a part of the residuary estate, ought to be now distributed to the residuary legatees including the respondent, averring that he is ready and willing to receive his just proportion thereof.

In the answer of Mary Butler it is averred, that she agrees, that so much of the fund of $20,000 as shall remain after fully securing the payment of the annuity, shall be paid to the complainants, according to the prayer of their bill, and that she is willing to come to some equitable agreement with respect to the same, in such manner as the Court shall direct.

The joint and several answer of William E. Hancock, Elizabeth L., Mary L., Franklin and Washington Hancock avers that they are infants under the age of twenty-one years ; that they are advised, that if any such bequests as set forth in the bill were made by the testator, the sum of $20,000 three per cent. stocks is by the tenor and effect of the will bequeathed equally to all the children of Betsy Hancock, after the death of Mary Butler without issue, and that the same is no part of the residuary estate of the testator ; and prays that their rights in the premises may be respected.

It was admitted, at the argument, that at the time of his decease, James Scott held the sum of $20,138·61, in the three per cent. stock of the United States.

*J. G. Rogers* for the complainants. The three per cent. stock was not specifically devised, but only charged with the annuity, and therefore constitutes a part of the general residue. The annuity thus becomes a charge on the general residue. *Oakes* v. *Heath*, 1 Ves. sen. 141. If this was not a specific legacy, then, as the whole stock forms a larger fund than is necessary for the purpose of raising the annuity, a sufficient portion of it may be set apart to effect this object, and the remainder be distributed among the residuary legatees. *Ellis* v. *Walker*, Ambl. 309 ; *Simmons* v. *Vallance*, 4 Bro. C. C.

*Hancock v. Hancock.*

*March 21st.*

Hancock
v.
Hancock.

345 ; 2 Wms. on Executors, 742 ; *Humphreys* v. *Humphreys*, 2 Coxe, 184 ; *Bronsdon* v. *Winter*, Ambl. 57 ; *Kirby* v. *Potter*, 4 Ves. 748 ; *Deane* v. *Test*, 9 Ves. 152 ; *Dimes* v *Scott*, 4 Russel., 195 ; *Ashburner* v. *Maguire*, 2 Bro. C. C. 108. If the fund should prove insufficient for raising the annuity, then the deficiency must be made up. *Savile* v. *Blacket*, 1 P. Wms. 778 ; *Attorney General* v. *Parkin*, Ambl. 566 ; *Davies* v. *Wattier*, 1 Sim. & Stu. 463 ; *May* v. *Bennett*, 1 Russell, 370 ; *Wilson* v. *Brownsmith*, 9 Ves. 180 ; *Purse* v. *Snaplin*, 1 Atk. 414.

A legacy of stock is held to be only a direction to buy such stock, if the testator does not own any. *Bishop of Peterborough* v. *Mortlock*, 1 Bro. C. C. 565. So, the words *to be paid out* of a fund, are held merely to *indicate* the fund from which the payment is to be made. *Kirby* v. *Potter*, 4 Ves. 748 ; *Deane* v. *Test*, 9 Ves. 152.

In the present case " the same " refers to the annuity, and not to the stock.

*F. Dexter* for the respondents.

*April 3d.*

SHAW C. J. delivered the opinion of the Court. The principal question in this case is upon the construction of the provisions of the will of James Scott. The claim of the plaintiff proceeds upon the assumption, that by force of this will the three per cent. stock was not itself bequeathed by the second clause in the will, but that, subject to the annuity of $600 per annum charged upon it, it passed by force of the eighth clause, to the residuary legatees ; and therefore, if it is more than sufficient, in consequence of circumstances which have since occurred, to raise the sum of $600 annually, the plaintiffs, as such residuary legatees, are entitled to distribution of the surplus. But the Court are all of opinion, that this would be an unnatural and forced construction. The invariable rule in the interpreting of wills is, to ascertain the meaning and intent of the testator ; in doing which recourse is to be had to every clause and word in the will, and the condition and circumstances of the testator's estate, to which the will applies, and to which the testator must have had reference.

Construed in reference to these considerations, we are of

opinion, that it was the intention of the testator to give to his unmarried daughter an annuity of $600, payable from the income of his three per cents, and at her decease, to give the same, that is, the same three per cents, equally among the children of both families, that is, equally among all his grandchildren. Any other construction would involve the extraordinary conclusion, that the testator intended to create an annuity chargeable on this stock, not for the life of his daughter only, but in perpetuity, and that the stock itself should never be distributed nor his estate settled ; and that after the death of his daughter, the same $600 annually was to go to his grandchildren, however numerous, and that forever. But the stock itself, at three per cent., would yield a trifling fraction over $600 annually, so small that it cannot be supposed to have been considered of any importance by the testator.; then, upon the construction which we adopt, the stock was. to remain in the hands of his executors, during the life of his daughter, and the income to be paid over to her, and at her decease, the stock to be distributed equally among all his grandchildren then living. This seems to us also to be the most obvious grammatical construction of the language used. The words " the same," may refer to the $600 per annum or to the three per cents, but the most obvious reference is to the last antecedent. By a necessary implication, the stock was to remain during the life of his daughter, and is no otherwise disposed of in the will, than by the clause in question, or the residuary clause.

Further, the words are, "*the same* to go to her children and the children of Betsy Hancock equally." To give a sum of money or stock, upon the happening of a future event, uncertain as to the time it may happen, to a class of persons described, to be equally divided, is natural and usual ; but to create an annuity, chargeable upon personal property, and give it to one for life, and then to give that annuity to a class of persons, to be equally divided among them, would be improbable and out of the usual course of such bequests. From all the views we have taken of the terms of the will and the circumstances of the testator's estate and family, we are of opinion, that it was his intention to set apart the three per cents during the life of his daughter, to raise her annuity out of it,

Hancock
*v.*
Hancock.

and then to give that amount of stock to be equally divided among his grandchildren.

The consequence is, that the vesting of this bequest, is suspended during the life of the annuitant, and then it will go, not to the complainants exclusively, as residuary legatees, but to all the grandchildren.

*Bill dismissed.*