*Luce *vs.* Carley.                    [ *451 ]

Where premises adjoining a river above tide water, are described as bounded by a monument standing on the bank of the river, and a course is given as running from it down the river as it winds and turns to another monument, the grantee takes *usque filum aquæ*, unless the river be *expressly* excluded from the grant by the terms of the deed.

A *license* given by the owner of the bank of a river above tide water, to abut a dam built across such river to the bank owned by him, is a perfect answer to a claim of *adverse possession* set up by the party obtaining such license, or by a *purchaser* from him, although the purchase be made *without notice* of such claim.

Error from the Cortland C. P. Carley sued Luce in *trespass*, for tearing down part of a *dam* across the *Onondaga river*, by means of which dam the mill of the plaintiff was supplied with water. The plaintiff was the owner of the land on the *west side* of the river, and *Amos P. Granger* (under whom the defendant acted) the owner of the land on the *east side* of the river at the place, where the dam butted on the shore. The river at that point is about ten rods wide, and a portion of the dam destroyed was within thirty feet of the east shore. In 1815 *Parley P. Wood*, who derived his title from one *Barnabas Wood*, was the owner of the *east* shore, and *John Smith* the owner of the *west* shore, and in that year John Smith, by the *license* of Parley P. Wood, extended the dam by continuing it from an island in the river to the east shore, a distance of about thirty feet. In 1829, John Smith sold his property on the west shore of the river to William Smith and another person, conveying to them a right to the dam, extending the whole distance to the east shore of the river, and in 1833 the property thus described came to the plaintiff by sundry mesne conveyances. The plaintiff, since his purchase, used the dam and annually repaired it. On the other hand, Parley P. Wood conveyed his property, in 1832, to Daniel Wood, who in 1835 conveyed it to Amos P. Granger. *Barnabas Wood*, grantor of *Parley P. Wood*, derived his title by deed from J. and S. Currey, bearing date 10th August, *1806. The premises con-    [ *452 ]
veyed contained about 300 acres of land. One of the courses.
in the description of the premises ran to a hemlock stake " standing on the *east bank of the river*, from thence down the river *as it winds and turns,* 24 chains and 94 links, to a hard maple tree," &c. ; and the deed from Barna-

bas Wood, to Parley P. Wood describes the premises conveyed as "Beginning at a hard maple tree standing on *the east bank of the Onondaga river*," and then, after giving a course and distance *east*, and another *north*, proceeds as follows : "thence *west* 50 chains and 10 links to the *east bank* of the Onondaga river, (and) thence *south along the Onondaga river* to the first mentioned bounds, containing," &c.   Upon this state of facts the court charged the jury that the possession of the dam by John Smith and William Smith were not adverse to Parley P. Wood and those claiming under him ; it was apparent that their possession was conventional and not adverse.   But if they (the jury) should be of opinion that the plaintiff, when he bought the mill and dam and went into possession, supposed and believed that he had procured a full and absolute title to the same, as described in his deeds, in good faith and without notice of the parol agreements and understandings between Parley P. Wood and John Smith and William Smith, then the plaintiff's possession would be adverse, (although the possession of those from whom he purchased was not adverse,) and the deed from Daniel Wood to Amos P. Granger would be void *pro tanto*.   To which charge the counsel for the defendant excepted.   The jury found a verdict for the plaintiff, on which judgment was entered.   The defendant sued out a writ of error.

*H. Ballard & J. D. P. Freer*, for the plaintiff in error.

*W. H. Shankland*, for defendant in error.

*By the Court*, Cowen, J.   It is impossible to read the bill of exceptions, without at once concurring with the court below, that, independently of the question of adverse possession in the plaintiff, when Granger, the defendant's principal, *took his deed in 1835, he had a complete title to the soil on the east side of the Onondaga river, *usque filum aquæ*.   The deed from the Curreys bounded *Barnabas Wood* by a stake and maple tree mentioned in the deed as standing on or near the east bank, the intermediate line running along the river as it winds and turns. It is never thought that monuments mentioned in such a deed as occupying the bank of the river are meant by the parties to stand on the precise water line at its high or low mark.   They are used rather to fix the *termini* of the line which is described as following the sinuosities of the stream, leaving the law to say, as the line happens to be above or below *tide water*, whether the one half of the river shall be included, with the islands which lie on the side of the channel nearest to the line described.   Where the grant is so framed as to touch the water of the river, and the parties do not expressly except the river, if it be above tide, one half the bed of the stream is included by construction of law.   If the parties mean to exclude it, they should do so

[ *453 ]

by express exception. Without adhering rigidly to such a construction, water gores would be multiplied by thousands along our inland streams small and great, the intention of parties would be continually violated, and litigation become interminable. °In these grants, which bounded each side of the Onondaga river, the earlier proprietors, it seems, understood their rights to be precisely what the common law declared them to be ; and when the Smiths desired, in 1814 or 1815, to avail themselves of a dam on *Parley P. Wood's* side of the island, they made application to him for *license* to extend it, and a full and friendly understanding was entered into by *parol.* The Smiths had leave to extend their dam, and *Wood* was to have the benefit of it for the purposes of such machinery as he might afterwards choose to erect ; nay, the Smiths explicitly recognized Wood's title to the island, by first offering to purchase it. Failing in that, they submitted, and extended their dam under the *parol license.* Clearly the court below could not do otherwise than held the Smiths bound by that arrangement. They did not put it too strong to the jury, when they said that any claim of
*title by the Smiths, after thus coming in conventionally under   [ *454 ]
Wood, could not raise an adverse possession as against him or any
person claiming under him. That the court below gave the grant to Barna- °
bas Wood a construction by no means too comprehensive, may be seen by the late case of *Starr* v. *Child*, 20 *Wendell*, 149, 156 *to* 158, *and the books cited in that case ;* and the effect of a clear paper title recognized and acted upon by the Smiths, they taking under it by express agreement the right to run their dam from the island to the eastern bank, was obviously not overrated. They at least were concluded against alleging an adverse possession. *Colvin* v. *Burnet*, 17 *Wendell*, 564, 568, 9, *and the cases there cited. Hart* v. *Vose*, 19 *id.* 365. *Parker* v. *Foote, id.* 809. *Butler* v. *Phelps*, 17 *id.* 642.

We think also that the court were bound to regard the successors of the Smiths as in the same case with them, whether such successors came in with or without notice of the arrangement. The court erred, therefore, in charging that the jury might find an adverse possession in the plaintiff. It is going far enough to say that a squatter, a man presumptively holding in privity with the true owner, may raise an adverse possession in his grantee by an absolute conveyance. Such an act may be received as evidence to overturn the presumption ; and I take that to be the only principle on which even the naked possessor can work an ouster by his deed to another. In the case at bar, there was no room for presumption, any more than if the Smiths had taken a lease of Wood. Suppose the license to extend the dam had been in writing or under seal. It would have derived no greater force from either circumstance. It could have taken no firmer ground, nor have been more available, except in the facility and durability of the evidence by which

it might be established.    Yet no one would suppose in such a case, that possession of the owner could be disturbed by any adverse act of the person holding the license, any more than if he were a lessee.    In both cases his possession would be the possession of the true owner ; his grantee steps into the shoes of his grantor ; he takes *cum onere*.    A lease to his [ *455 ] grantor is a lease to him, and so of a license ; so of every *thing by which the grantor has encumbered or qualified his estate. Verdicts, answers in chancery and other admissions of the grantor are all evidence against the grantee.    They affect him in the same degree as they would his grantor, if they had been brought to act immediately on him. *Vid. Brandter, ex dem. Fitch,* v. *Marshall,* 1 *Caines,* 394 ; *Jackson, ex dem. Griswold,* v. *Bard,* 4 *Johns. R.* 230.    In such cases the law never stops to inquire whether the grantee have notice or not of the matter offered against him, unless there be some registry law requiring it.    It is not pretended that the registry law extends to a license.    In the case at bar, the license was clearly proved by persons who were themselves parties to it. There was scarcely more room for mistake than if it had been under their hands and seals.    Clearly, it bound the plaintiff as well as the Smiths.    If his title has been embarrassed by the act of his grantors or any other person, he must resort to a remedy on his covenants of title.    He cannot expect that the law should give any effect whatever as against Granger, to acts between him and persons over whom Granger could have no control.

It is unnecessary to consider the other points in the cause made by the counsel for the plaintiff in error.    They are of a minor character.    The court below were, in the main, perfectly right ; but we think they erred in allowing an adverse possession to be raised in behalf of the plaintiff below, unless the jury could say they disbelieved both the witnesses who swore to license.    Their want of credibility was not pretended.    So far from that, all parties assumed that they spoke the truth.

The judgment of the court below is reversed ; *venire de novo* to issue there ; the costs to abide the event.