We do not entertain any serious doubt upon the question presented in this case. The rule of construction contended for by the plaintiffs has often been considered by the courts, and has become well settled. In the case of Child v. Starr (4 Hill, 369), it was held that a boundary line running eastwardly to the Genesee river, thence northwardly along the shore of the river, conveyed no part of the bed of the stream, and that the grantee took only to low water mark. But the controlling words were, "along the shore of the river;" and upon the force of those words alone the judgment of the Supreme Court, which had been the other way, was reversed in the Court of Errors by a single vote. Chancellor WALWORTH, who gave the leading opinion, said: "Running to a monument standing on the bank, and from thence running by the river or along the river, c., does not restrict the grant to the bank of the stream, for the monuments in such cases are only referred to as giving the directions of the lines to the river, *Page 500 
and not as restricting the boundary on the river." In Luce v.Carley (24 Wend., 451), the course began at "a hard maple tree standing on the east branch of the Onondaga river;" and then, after giving other courses and distances, the description proceeded, "thence west to the east bank of the river; thence along the river to the first mentioned bounds." It was held that the grantee "took to the centre of the stream." This rule is recognized in very many adjudged cases, which need not be cited. We have no doubt of the justice and policy of the rule, nor that, in most cases, it gives effect to the actual intention of the parties to such grants. Of course, it does not apply to streams which belong to the public, as navigable waters.
In this case the boundary begins at a post standing on the north bank of the creek, and it returns to a post also standing on the "north bank of Cattaraugus creek," and proceeds "thence down the same, and along the several meanders thereof, to the place of beginning." On the part of the defendant it is claimed that "down the same," in this description, means down the bank, and not down the creek. But we think this is not the fair construction of the language. The words more obviously refer to the creek, which is the immediate antecedent, than to the bank. And, again, the phrase, "along the meanders thereof," is more descriptive of the windings of the stream than of the irregularities or sinuosities of the bank. Indeed, the word "meander" is derived from a winding river in Asia Minor, known by that name in classic history. And, in our language, we say that a stream meanders; but, I think, we never speak thus of a shore. To speak of a meandering shore, would be to use a singularly inapt expression. It may well be added, that a strictly shore line upon a river would, in most cases, be extremely difficult to trace. Parties may so restrict their grants, if they will; but the restriction ought to be found in very plain and express words. If a different rule of construction were to be established, then, as Judge COWEN observed (24 Wend., 453), "water-gores will be multiplied by thousands along our inland streams, small and great; the *Page 501 
intention of parties will be continually violated, and litigation become interminable."
The boundary in question has one peculiarity which may deserve a moment's attention. The point of commencement is on the north bank of the creek. The courses being irregular, and the stream a winding one, the former cross the latter three times before reaching the last course but one, and that course and distance are carried across the fourth time; thus returning to the north bank at a post, from which the last line is drawn to the place of beginning. It is claimed that, by thus recrossing the stream to a monument in order to reach the same bank from which the description began, the whole bed of the river is necessarily excluded. But we think there is nothing in this peculiarity to take the case out of the general rule. Both at the first and the last points in the description, monuments were necessary in order to mark the places of intersection with the stream. Such monuments are never located, in fact or in description, in the channel of a river; and, in order to avoid apparent incongruity in a boundary like the one in question, they must both be placed on the same shore. If the last monument, or point of intersection, had been placed on the south shore, and from thence the line had proceeded along the shore or the river, the paper lines would have been incomplete without another crossing of the stream to the place of beginning on the north side. If such had been the description, the crossing line included, it might have justified a strong inference that the whole bed of the river was intended to be embraced. The most obvious mode, therefore, of indicating the river, that is to say, the centre, as the dividing line, was to draw the last course but one to the same bank on which the first monument stood; and it does not seem to us material whether the stream had not been previously crossed at all, or whether the bank was reached by recrossing it on a return course. The presumed intention of the parties, and, therefore, the construction of the boundary, must, we think, in either case, be the same. The land in question on this appeal lies between the top of the bank and the centre of the river on the last line and course in *Page 502 
the description; and we are of opinion that the judge at the trial erred in ruling that it did not belong to the plaintiffs.
It appears that, on the trial, the plaintiffs recovered so much of the premises disputed in the action as lay north of the river bank; and they excepted because they were not allowed to recover the part which lay between the bank and the centre of the stream. On the appeal to the general term, the defendant did not appear — the motive for non-appearance obviously being to have a new trial granted by his default, which would enable him to retain possession of the part for which the plaintiffs had the verdict. In this way, successive trials and appeals in the Supreme Court might go on indefinitely, and the plaintiffs could never obtain the judgment of this court in respect to the other portion of the premises. The Supreme Court, therefore, very properly refused to grant the new trial by default, but, on the plaintiffs' request, examined the question on its merits, and denied the motion. We have already held that the plaintiffs' appeal to this court is regular. (19 N.Y., 587.
All the judges concurring, except HOYT, J., who expressed no opinion,
Judgment reversed, and new trial ordered.