resided at the time of his commitment. Code Civ. Proc. § 2323a; Insanity Law, §§ 60, 61 (Laws 1896, p. 491, c. 545).

When the present committee was appointed, the defendant Brinckerhoff had already been committed to the asylum, and it is not contended that the insane person has ever been put under the personal control of his relatives or of his committee, as the court would have had power to do. Insanity Law, § 62 (Laws 1896, p. 492, c. 545, as amended by Laws 1903, p. 329, c. 146, § 1). The detention of the incompetent at Bloomingdale Asylum cannot be regarded as his voluntary act, and the circumstance that the authorities of the asylum removed the inmates of that institution from the city of New York to more spacious quarters in Westchester county may not be taken as evidence of an intent on the part of either the lunatic or his committee to change his domicile. "As a general rule, a person does not gain a residence except by some change in the place of his abode, accompanied by an intent to acquire such new residence." Jacobs on Domicile, §§ 125, 126, 127. "When a person shall have acquired a residence in a tax district and shall have been taxed therein, such residence shall be presumed to continue for the purpose of taxation until he shall have acquired another residence in this state or shall have removed from this state." Tax Law, § 8 (Laws 1896, p. 800, c. 908); Matter of Nichols, 54 N. Y. 62.

It is in evidence that the defendant Brinckerhoff paid the taxes through his committee in New York county for the year 1902 and for some years previous thereto, and, consequently, since the removal of Bloomingdale Asylum to Westchester county. There is thus a complete absence of any intent to change the domicile of the incompetent to Westchester county.

The defendant Brinckerhoff was lawfully assessed in the county of New York, and judgment must be directed in favor of the plaintiff for the sum of $3,697.25 for the unpaid personal taxes for the year 1906, for which he was duly assessed, together with interest thereon at the rate of 7 per cent. per annum from October 1, 1906. No personal judgment is to be entered against the committee. The defendant Thomas S. Ollive is authorized, however, to pay the amount of said judgment out of the estate of the incompetent.

Judgment accordingly.

---

(63 Misc. Rep. 439.)

SOHMER CO. v. C. H. WELLING INV. CO.

Supreme Court, Special Term, New York County. May, 1909.)

LANDLORD AND TENANT (§ 200*)—LEASE—CONSTRUCTION.

A 10-year lease, providing for an increase in rent at fixed periods during the term, with a maximum annual rental during the last four years, and permitting a renewal on the same terms, contemplates the payment of the maximum annual rental throughout the entire renewal term.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 200.*]

Action by the Sohmer Company against the C. H. Welling Investment Company. Judgment for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Otto Kempner, for plaintiff.
J. Noble Hayes, for defendant.

BLANCHARD, J. This action is brought to compel the performance of the terms of a written lease in respect of its renewal. The plaintiff leased the premises from one Henry Corn for a period of 10 years. Henry Corn, during the plaintiff's holding, sold the building to Katherine Welling, and the plaintiff duly attorned, and continued so to do, to her and her successor in interest, the defendant herein. The lease, among others, contains the following covenants:

"First. To pay the annual rent of ten thousand dollars ($10,000) for the three years beginning February 1, 1898. Twelve thousand dollars ($12,000) for the three years beginning February 1, 1901. Fourteen thousand dollars ($14,000) for the four years beginning February 1, 1901, and the privilege of renewal on the same terms and conditions, including steam heat and elevator service."

The defendant, when requested by the plaintiff upon the expiration of the 10 years mentioned in the agreement, declined to renew the lease upon the interpretation of the clause made by the plaintiff, claiming that its interpretation, to wit, that the rent for the first three years of the new 10-year period should be $10,000 per annum, for the second three years $12,000 per annum, and for the last four years $14,000 per annum (in aggregate the same amount already paid for the first term of 10 years), was not that called for in the lease, which, by its terms, the defendant contends, contemplates the payment of $14,000 per annum for each and every year of the second term. The court is thus called upon to construe said clause in the lease, and must construe it in the light of principles laid down for the interpretation of written contracts.

An examination of the clause in dispute discloses an apparent ambiguity in terms. The weight of authority seems to be that the word "same" qualifies its immediate antecedent; and thus, in the strict letter of the instrument, the "same terms and conditions" referred to the last amount as the annual renewal rent. Seneca Nation of Indians v. Knight, 23 N. Y. 498; Hancock v. Hancock, 14 Pick. (Mass.) 70, 75. On the other hand the clause is placed under the head of "rent," and it may be argued that all the terms in the paragraph are qualified by the relative clause which qualifies the last. It is therefore the duty of the court, such ambiguity existing, to construe the instrument in the light of those surrounding circumstances which the parties must be presumed to have considered when entering into the agreement, as well as that construction which best fits well-established principles affecting the making of leases.

It must be presumed that, the defendant herein having attorned and having continued to attorn to the present tenant, the plaintiff stands in the shoes of the original maker, Henry Corn, and, as Henry Corn did, deals at arm's length in the making of the instrument. In so doing, as to which there is no dispute, they agreed that the terms were fair with regard to the first period of ten years. Hence those reasons should be taken into consideration in so far as the same conditions exist that apply to the second period.

The lease in question provided for what is termed a "crescendo" rental. By "crescendo rental" is meant one which, due to certain well-known and universal laws applicable to growing localities, provides for a gradual increase of the amount of rent at fixed periods during the term of the lease. As is pointed out above, the parties to the lease recognized these laws as applicable to the premises, and hence it is presumed that the premises in question were increasing in value with a corresponding increase in tax rates and rental value. Thus to construe the clause as the plaintiff contends would call forth the conclusion that the premises had returned, after the first 10-year period, to their original taxable and rental value, which is manifestly improbable. Judicial notice may be taken that property of the character of that in question does not depreciate materially in value during a period of 10 years. Had, however, from some undisclosed cause, the value of the premises become less to the plaintiff by reason of the lapse of time of the first period, under the terms of the lease it was not bound to renew the agreement. It is thus placed in the position where it can protect itself from serious loss, while the defendant may be compelled to sustain material damage. It is not the intention of the court to deprive the plaintiff of any just advantage which by superior foresight or acumen it may be entitled to; but, had it so intended, it might have made the facts more particular, as it now contends the defendant should have done had the defendant intended the construction it maintains. The relative position of the two parties at the beginning of the second period, where ambiguity exists in the terms of a written instrument providing for a renewal of its terms, is of weight in determining which construction should prevail when one or the other would create a situation inconsistent with surrounding conditions. This agreement impliedly admits by both parties that the rental conditions in the lease were just and fair during the first 10-year period, and that they sprang from laws applicable to the premises in question, and, in the absence of proof to the contrary and the improbability of change in those circumstances, the construction for which the plaintiff contends must be denied.

It follows that judgment is found for the defendant.

Judgment for defendant.