Brewster, J.
The judgment appealed from adjudicates upon the titles of the parties to a portion of a small inland pond in Sullivan County formerly known as Pleasant Pond (now called Silver Lake). The controversy stems from the description of the easterly boundary of a parcel of land first employed in a 1916 deed from common owner, Walker, to one of defendant’s predecessors in title, Norris,' the pertinent part of which is as follows: “ * * * thence along the north line of said 4 acre lot and along a stone wall 349 feet to Pleasant Pond low water mark, thence in a northerly direction along said Pleasant Pond shore 864 feet more or less to wire fence and stake; * * *. The said premises to run along the said Pleasant Pond and to run to the low water mark thereof.” Defendants own whatever title to the pond was thus created. If the grant extended only to low-water mark, then from thence to the center of the pond the title is in the plaintiffs, by a later deed from the common owner and mesne conveyances. The judgment delimits the easterly boundary of defendant’s ownership at the line of the pond’s low-water mark, and directs defendant’s removal of its structures from, and restrains its use of, any area of the pond adjacent thereto. The basis of this is the disclosure of the record title of the parties. Plaintiffs rested their case upon their paper title. The above-quoted words in defendant’s grant have been held, per se, to so restrict its easterly extent to low mark that it effected a reservation by the grantor of the portion of the pond between it and its thread. We cannot agree. The above-quoted description in defendant’s grant if on its face not sufficient to extend it to the center of the pond, is at least so ambiguous and lacking in an express reservation of the land under water as to have opened inquiry into the intention of the original grantor.
The rule that the terms of a grant are to be liberally construed in favor of the grantee has special emphasis as to a grant of land bordering upon a small inland body of water. It is uniformly held that in such instance there is a ■“ very strong presumption ” that the grantor intended to convey his ownership under water, at least to the center, and “ that nothing short of an express reservation will overcome its force.” (8 Am. Jur., Boundaries, § 11; and see, White v. *26 Knickerbocker Ice Co., 254 N. Y. 152, 156; Stewart v. Turney, 237 N. Y. 117, 121; Fulton Light, Heat and Power Co. v. State of New York, 200 N. Y. 400, 417; Gouverneur v. National Ice Co., 134 N. Y. 355; Seneca Nation of Indians v. Knight, 23 N. Y. 498, 500; Luce v. Carley, 24 Wend. 451, 453.)
The vexed question arising from a choice of language in the description of such a grant received extended treatment in the above-cited cases and cases therein cited. Despite the many adjudications upon the subject the particular choice of language in the instant case seems novel as regards the case law in this State. Here the boundary is given as the pond at low-water mark. No other exclusion or reservation is clearly expressed. Thus the boundary touches water. It is not placed upon “ dry land ” for it lies along and in contact with a body of water except when entirely covered by the water of the pond. It is ever marked by the presence of water for no space can ever intervene between the pond and the boundary. The contention that the course which is stated as “ along said Pleasant Pond shore ”, fixes it at the mark made by low water can at most but add to the ambiguity for it is patent that, as used, “ shore ” meant its waterside edge as marked from time to time by low water. Considering the stated boundary as synonymous with “ margin ”, “ edge ” or “ side ” of the pond does not per se amount to the requisite reservation. As far back as Ex Parte Jennings (6 Cow. 518) there was an issue as to whether a grant of land from the State which bounded it on the “ margin ” of a nonnavigable stream, Chittenango Creek, conveyed to the center thereof, and it was held that it did (p. 528), and this in spite of the rule that as regards the sovereign the grant is to be strictly construed against the grantee. Confer v. Pirman (247 App. Div. 825, affd. 273 N. Y. 587) was a case quite like the one on appeal. It was a controversy over the ownership of a portion of an Adirondack pond, about the size of the one in question. The parties owned children’s summer camps on each side. Confer sued to enjoin Pirman’s use of his side of the pond. The latter’s record title began with a deed from an owner of the entire pond and its upland on both sides, wherein the description was: “ * * * that part of said quarter [of Lot 60] that lys (sic) on the east side of what is known as the Hutchins Pond untill [it] strikes the outlet of said pond ”. In later conveyances the description was: “ * * * that part of said quarter that lies on the east side of * * * Hutch (sic) Pond and runs along thence southerly on the East Side of said Pond,” etc. Thereafter and *27 down to and including the deed to Firman the description was: “ That part of said quarter that lies on the east side * * * [of the] * * * Fond [thence] running southerly along the water’s edge to the outlet ” etc. It was finally determined, in effect, that Firman’s title extended to the center of the pond. Confer had acquired all title to the pond except what Firman owned, and his suit for injunctive relief to exclude Firman’s use of the half of the pond on his side was dismissed.
The stark description of the boundary as the low-water line can be variously interpreted. It can reasonably imply the grantor’s assurance that the grant should at all times be bounded by the waters of the pond in order that the enjoyment of access thereto in connection with the use of the granted upland be uninterrupted. That interpretation is at least as reasonable as to construe the choice of the fluctuating line as meaning only where it might chance to be, there and no farther out. It would be rather incongruous to intend a shifting meander as a fixed and definite boundary. Such could well be productive of much uncertainty. Confusion, too, might be added in the instant case since there is evidence that the pond is regulated artificially, and hence doubt can arise over whether the pond’s natural or artificial low-water mark controls. Moreover, if the grantor intended a restriction to the upland why did he extend the grant into the pond or pond bed and on out as far as its waters might recede? It is difficult to conceive how the inter-vale would be of much if any value to the grantee, whereas if the intention was to reserve the land under water and thus continue in ownership and control of the pond, the strip between the high and the shifting low-water mark would have been of considerable, probably great, value to the grantor.
It is clear that the paper titles, if on their face they'failed to defeat plaintiffs’ contentions under the “ rule of property ” pointed out in Stewart v. Turney (237 N. Y. 117, 121, supra) they at least opened inquiry to the intention of the original grantor, and therein plaintiffs bore a burden of proof to square that with their interpretation of the water mark line of boundary. Not only did they fail in this but defendant’s proofs were ample to refute the plaintiffs’ claims and to establish its own which it pleaded affirmatively. The evidence is convincing that the very objective of the Walker grant was to afford the grantee access to and enjoyment of the advantages afforded by the pond. This was competent, and even the declarations of the grantor, although then deceased, would have been competent. (8 Am. *28 Jur., Boundaries, § 96.) In addition there was evidence of the long, open, undisputed and continuous possession and use made of the lake by Norris and his assigns from the time of the Walker grant to the present time — a period of over thirty years, and for over twenty, by the defendant in hostility to the very claim which plaintiffs now assert. “ In questions of boundary, long and notorious possession authorizes the inference of any fact which can rationally be inferred to make such possession consistent with right.” (8 Am. Jur., Boundaries, § 90.)
The judgment under appeal should be reversed and the complaint dismissed; findings of fact numbered “ 7 ” and “ 8 ” and conclusions of law numbered “ 1 ” to “ 7 ”, inclusive, should be reversed and new findings made to the effect that in the 1916 deed from Walker to Norris it was not the intention of the grantor to locate and limit the easterly boundary of the eight-acre parcel at the low-water mark of Pleasant Pond, but that such grant included the land adjacent thereto and extending to the center of the pond, title to which is now owned by the defendant, and that defendant is entitled to judgment accordingly.