*Leo Patrick McGowan, Eugene F. Toro*, for defendant.

INDUSTRIAL NATIONAL BANK OF PROVIDENCE *et al., Trustees* vs. J. JOSEPH NUGENT, *Atty. Gen., et al.*

FEBRUARY 4, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

238

[redacted]

CONDON, C. J.  This is a bill in equity for the construction of an indenture of trust entered into by W. Dorothea Bradburn with the Industrial National Bank of Providence and Clayton D. Sheldon as trustees. When the cause was ready for hearing for final decree in the superior court it was certified to this court for our determination pursuant to G. L. 1956, §9-24-28.

The indenture was executed on November 29, 1948. Thereafter on divers dates the settlor executed various amendments thereto. The sixth and last amendment was made on January 25, 1957. Paragraph "Eighth" thereof, together with thirty-one subparagraphs thereunder identified by letters (a) to (ee) inclusive, has given rise to the trustees' prayer for construction thereof and for instructions relative thereto. The paragraph reads in part as follows:

"Upon the death of W. Dorothea Bradburn, the trustees shall pay to the executors under her will or the administrators of her estate such sums as said executors or administrators shall request in writing for the purpose of paying the expenses of administration of her estate, her funeral expenses, including the erection and lettering of a suitable marker on the 'Bradburn' lot, if this has not already been done, the expenses of her last illness and any other of her just debts existing at her decease, and all estate, inheritance, legacy, succession or transfer taxes imposed by reason of her decease upon her estate or in respect to any interest therein or upon or in respect to any property, including any jointly held property, which shall not come into the possession of said executors or administrators, to the end, without limiting the generality of the foregoing that all of her beneficiaries may receive their respective interests without diminution by reason of any of said taxes except as the residue of the corpus of the trust estate created hereby may be thereby reduced and notwithstanding the fact that her probate estate may be sufficient to pay the foregoing, and further notwithstanding the fact that the trustees and said executors or administrators may be or include one and the same persons or person. The trustees shall also pay any unpaid balance of a certain scholarship at Brown University, Providence, Rhode Island, which the grantor has or may establish in memory of George W. Bradburn, her late husband, in the sum of $20,000; and after paying the same, all the remainder of the trust estate, including any accrued and undistributed net income shall be distributed free of and from all trusts as follows * * *."

The various subparagraphs are provisions for distribution to certain beneficiaries upon the death of the settlor. These provisions may be considered in three groups.

The first group consists of seven dispositions, of which the following is typical: "(b) The trustees are directed to pay over and deliver to Catherine A. Hawker, presently of Meriden, Connecticut, one-fortieth of the net trust estate or $15,000, whichever may be less, to her, her heirs and assigns forever." The distributees thereunder will be referred to hereinafter as the "1/40 beneficiaries."

The second group consists of twenty-one dispositions like the following: "(e) The trustees are directed to pay over and deliver to Donald R. Geehring, presently of Bethesda, Maryland, one-eightieth of the net trust estate or $5,000, whichever may be less, to him, his heirs and assigns forever." These distributees will be hereinafter referred to as "1/80 beneficiaries."

The third group consists of a specified list of charities for each of which equal provision is made in subparagraph (ee) as follows:

"After the payments aforesaid the trustees are directed to pay over and deliver all the rest, residue and remainder of the said trust estate, including any gifts or payments which may have lapsed by reason of the death of the beneficiary, in equal parts to those of the following named organizations which may be in existence at the time of the decease of said W. Dorothea Bradburn, the same to be given to each of them for the purposes stated:

"Providence Chapter of the American National Red Cross for general purposes of the organization

"United Fund, Incorporated for general purposes of the organization

"Providence District, The Salvation Army, for general purposes of the organization

"Crippled Children and Adults of Rhode Island, Inc. for general purposes of the organization

"Palestine Temple, Ancient Arabic Order, Nobles of the Mystic Shrine, a charitable corporation, for the furthering of its work for crippled children either at Springfield, Massachusetts, or Providence, Rhode Island, or elsewhere

"The Rhode Island Council of Churches, an unincorporated association of churches, for the general use and purposes of said organization

"The Rhode Island Hospital, Providence, Rhode Island, for the Cancer Endowment Fund.

"Home for Aged Women on George M. Cohen Memorial Boulevard, Providence, for general purposes of the organization

"Home for Aged Colored Women on East Transit Street, Providence, for general purposes of the organization

"Children's Friend and Service for the work of the Lakeside Home in Warwick"

Mrs. Bradburn died on April 22, 1958, at which time the principal of the trust estate was $500,526.36 and the accrued income was $6,239.02, making a total of $506,765.38. Fees and expenses of the trustees in the amount of $16,483.53 were deducted therefrom, leaving a balance of $490,281.85. Capital gains were realized on the sale of securities in the amount of $40,007.19, and from Mrs. Bradburn's death until December 31, 1962 the trust estate produced a net income of $42,440.12. The trustees paid the debts and administration expenses of the decedent's probate estate and also the state and federal taxes. They were then confronted with the question as to how the balance in their hands was to be distributed in accordance with the settlor's directions in paragraph "Eighth."

Pursuant to the prayer in paragraph (13) of complainants' bill they seek answers to the following specific questions:

"That by reason of the facts aforesaid and the provisions of the trust indenture as amended, your complainants are in doubt as to the proper method of com-

puting the share of principal to which the various beneficiaries, other than those entitled to $5,000, are entitled; and as to the amount or share of income, if any, and net capital gain if any, which should be paid to the various beneficiaries, including those entitled to said $5,000, and that, therefore, the following questions are presented:

"(i) In computing the shares payable under Subparagraphs (b) to (cc) inclusive of the Eighth Paragraph of said trust, as amended, should all or any of the payments made to or for the benefit of the executors of the will of W. Dorothea Bradburn under the opening clause of said Eighth Paragraph be deducted in determining the 'net trust estate' mentioned in said Subparagraphs?

"(ii) To which beneficiaries and in what shares and proportions should be paid the income collected after the decease of W. Dorothea Bradburn?

"(iii) Should the net capital gains realized on the sale of securities after the decease of W. Dorothea Bradburn be included in determining the net trust estate for the purposes of Subparagraphs (b) through (cc) inclusive of said Eighth Paragraph of said trust, as amended, or should such gains be included only in the rest, residue and remainder of the trust estate distributable to the charitable beneficiaries designated in Subparagraph (ee) of said Eighth Paragraph.

"(iv) In what manner should the 'rest, residue and remainder of said trust estate', mentioned in Subparagraph (ee) be determined?

"(v) Is the respondent Rhode Island State Council of Churches, a Rhode Island corporation, entitled to the gift in Subparagraph (ee) of the Eighth Paragraph of the trust made to the Rhode Island Council of Churches, an unincorporated association of churches, for the general uses and purposes of said organization?"

At the hearing before us the 1/40 beneficiaries, the 1/80 beneficiaries, and the charities were represented by counsel,

each of whom filed a brief and orally argued in support of a construction of the paragraph "Eighth" that would favor his group. The attorney general, who was made a party because of the provisions for the charities, briefed questions (i) to (iv) inclusive but took no position as to question (v). The only contention made in behalf of the 1/80 beneficiaries is that since they were entitled to the payment upon the death of Mrs. Bradburn they are entitled to interest on that part of such sum which was withheld at that time and paid at a later date.

The 1/40 beneficiaries contend that all payments made to or for the benefit of the probate estate should be deducted in determining the "net trust estate" in subparagraphs (b) to (cc) inclusive; that the gift did not vest until the time for final settlement of the net trust estate; that therefore income collected after the settlor's decease should be added to the "net trust estate" and paid to beneficiaries under (b) to (cc) inclusive; that the net capital gains should be added to the "net trust estate"; and that "rest, residue and remainder" is what remained after the provisions of subparagraphs (a) to (dd) inclusive have been fulfilled. These beneficiaries take no position as to the right of the Rhode Island State Council of Churches but leave it to the judgment of the court.

That party's counsel contends that it is the lawful successor to the Rhode Island Council of Churches and that it was the intention of the settlor that it should be included in (ee) in place of the Rhode Island Council of Churches. It also contends in common with the other charities mentioned in (ee), except The Salvation Army, that the expenses, taxes and fees paid by the trustees should be deducted before computing the shares of the 1/40 and 1/80 beneficiaries; that the income and capital gains realized after the death of the settlor should not be added before making such computation; and that the "rest, residue and remainder"

244

as described in subparagraph (ee) should include everything remaining after payments computed as above indicated are made to 1/40 and 1/80 beneficiaries.

The Salvation Army's counsel contends that the bequest to the Rhode Island Council of Churches fails, not because it cannot be identified but because it is an unincorporated association and as such cannot be a valid beneficiary. It also contends that income which accrued after settlor's death and net capital gains are payable to the charities. In other words, it takes the position that these items cannot be included in the "net trust estate" but are to be included in the "rest, residue and remainder" payable to the charities in (ee).

In the light of the language which the settlor has used to express her intention with regard to the 1/40 and 1/80 beneficiaries, we are of the opinion that by the words "net trust estate" she meant her trust estate remaining after the trustees had made all the payments of trustees' charges, administration expenses, funeral charges and taxes in accordance with the directions in the paragraph "Eighth" hereinabove quoted. Such intention thus gathered from the language of the whole paragraph is controlling. *Rhode Island Hospital Trust Co.* v. *Arnold*, 86 R. I. 38. Hence our answer to question (i) is in the affirmative.

Question (ii) is concerned with the proper distribution of income of the trust collected after the settlor's death. In considering the answer to this question we should especially note that the settlor herself expressly provided that the remaining trust estate "including any accrued and undistributed net income shall be distributed free of and from all trusts as follows * * *." We think this explicit direction to the trustees is indicative of an intention on the part of the settlor that the gifts to 1/40 and 1/80 beneficiaries should not vest until final settlement and that such income should be included in the corpus of the trust estate for the

purpose of computing the shares of such beneficiaries. The fact that the direction follows the words "and after paying the same," which are immediately preceded by the provision for the George W. Bradburn scholarship, does not militate against construing the word "same" to refer to all of the other payments provided in paragraph "Eighth."

Ordinarily the word would probably be construed to refer only to the payment of the scholarship gift, *Hancock* v. *Hancock*, 31 *Mass.* 70, but in the context of the whole of paragraph "Eighth" here this does not seem to be a reasonable construction. In the circumstances there is authority for referring the word back to an earlier antecedent. *Estate of Wallace*, 98 Cal. App. 2d 285. This construction requires a deduction of all the payments before the 1/40 and 1/80 beneficiaries' provisions are computed and by the same token it requires the inclusion of all income collected as part of net trust estate. And we so answer question (ii).

For the same reason as above, net capital gains realized on the sale of securities after the decease of the settlor should also be included in the net trust estate. Capital gains are not true income but a return of capital realized upon a change of form of the investment. As such, they are part and parcel of the corpus of the trust estate and must be included in determining the net trust estate for the purposes of subparagraphs (b) through (cc) inclusive. And we so answer question (iii).

Our answer to question (iv) is conditioned by our answers to the preceding questions. In other words the provision in (ee) that the trustees pay over and deliver "all the rest, residue and remainder" means all that remains after the payments provided in (b) through (cc) inclusive have been made in accordance with the above-described method of computation. In our opinion this was clearly the intention of the settlor as indicated by the language

which she used in laying out her special plan for the distribution of the net trust estate to the end, as she expressed it, "that all of her beneficiaries may receive their respective interests without diminution * * *."

This brings us to question (v). The Salvation Army contends that the Rhode Island State Council of Churches should not be included as a beneficiary under subparagraph (ee). The settlor originally provided among other charitable gifts a gift to the Rhode Island Council of Churches, an unincorporated voluntary association. We have heretofore held that such an association is "legally incapable of receiving and administering" a gift as a trustee. *Tillinghast* v. *Boy Scouts of America*, 47 R. I. 406, 410. But we have also held that equity will not allow an otherwise valid charitable trust to fail for want of a competent trustee but would appoint one to carry out the charitable intent of the donor. *Wood* v. *Trustees of the Fourth Baptist Church*, 26 R. I. 594, 602. However, there is no legal obstacle to prevent such an association from receiving and holding property in common as individuals. Where the gift is absolute and unconditional it may take effect and should be paid to the persons composing the association or their duly authorized agent. *Guild* v. *Allen*, 28 R. I. 430.

The gift here is clearly absolute and not in trust. There is therefore no merit in respondent The Salvation Army's contention that the gift to the Rhode Island Council of Churches failed because of its incapacity to receive the gift. There remains, however, the question whether the gift has failed because the Council had ceased to exist as a voluntary association. At first blush it would seem that this must necessarily be so. But upon closer examination and a consideration of all the circumstances surrounding the settlor with reference to the objects and purposes of the Council we think that it is reasonable to suppose, and entirely in keeping with the intention of the settlor, to construe the

incorporation of the Council as in no sense a new and different organization from the voluntary association, but that it was simply a change in its legal status to render it more capable of carrying out its original objects and purposes. The evidence in the record is undisputed that in every respect, except as to legal status, the incorporated Rhode Island State Council of Churches is one and the same organization as the Rhode Island Council of Churches, that the settlor was not unaware of this fact, and that in her lifetime she made contributions to the corporation. We are therefore of the opinion that the corporation is entitled to take the gift in subparagraph (ee) of paragraph "Eighth" made to the Rhode Island Council of Churches.

This completes the consideration of all the questions set forth in the complainants' brief. However, there is one further question raised in the brief of the 1/80 beneficiaries. These beneficiaries contend that they, as well as the 1/40 beneficiaries, are entitled to interest on their shares to be computed as of the date of the settlor's death to the date of payment of the shares by the trustees. They argue there is no language in the trust instrument that would justify denying them that interest. There is no need to belabor the point as we are of the opinion that the claim of interest is without merit in view of our conclusion above that interest collected since the death of the settlor is included in the "net trust estate." As a result thereof beneficiaries 1/40 and 1/80 are receiving the benefit of any claim of interest to which they may be entitled.

On February 19, 1964 the parties may present for our approval a form of decree in accordance with this opinion for entry in the superior court.

*Hinckley, Allen, Salisbury & Parsons, H. Eliot Rice, Stuart H. Tucker,* for complainants.

*J. Joseph Nugent*, Attorney General, *Harold S. Moskol*, Special Assistant Attorney General, *Higgins & Slattery, James A. Higgins, Earle B. Arnold, Wilfrid E. McKenna, Edwards & Angell, Charles G. Edwards, Edwards & Angell, Charles E. Clapp, II*, for respondents.