Lowell *v.* Robinson.

Joshua A. Lowell *vs.* William Robinson & *al.*

If the line of land conveyed be described as commencing at a stake by the side of a mill pond, which pond is caused by a dam across a fresh water river overflowing its banks in the spring but admitting all the water within the channel of the river in the summer, and from thence running from the pond and returning to another stake " by the side of the river or mill pond," and running " by the said pond to the first mentioned bounds;" the grant extends to the thread of the river.

And if the description be " running by the side of the mill pond," the land overflowed in the spring passes by the grant.

Parol evidence is inadmissible in either case to show that the parties intended to limit the grant to the margin of the water as it overflowed the land in the spring.

Trespass *quare clausum*, for cutting and taking away the plaintiff's grass. The facts in relation to the title of the respective parties by deed appear in the opinion of the Court. *Jones* entered into possession within twenty years under his mortgage, by judgment of Court, and foreclosed the same, and the defendant had the title of *Jones. Nathan Hanscomb,* under whom both parties claimed, was released by the plaintiff, and testified, that he never claimed the meadow lot under *Scott,* his grantor of certain lands, and, as the defendant contended, of the meadow, but by possession only, and that he had been in possession by cutting the grass annually for thirty-nine years prior to his deed to the plaintiff, and had fenced this and other land of his from the road. The case states, that it was proved by the plaintiff, and not objected to by the defendants, that when the lot described in the deed from *George*

*Scott* to said *Nathan Hanscomb*, was laid out in 1797 by the committee of lot layers appointed by the proprietors of the township, they were requested by said *Hanscomb* to include the meadow with the upland, and that the committee then refused to include the meadow, and made their bounds at the monuments by the side of the mill pond, as described in his deed from *George Scott;* and it was also proved by certified copies from the proprietors' records of 1770, that the first division rights were to be laid out exclusive of marsh, and that the fresh meadows in the township were laid out in separate and distinct lots by themselves in 1800.

At the trial, before SHEPLEY J. the plaintiff requested the Judge to instruct the jury, that the plaintiff and those under whom he claimed, having been in quiet possession of the meadow for forty years, claiming it as their own and mowing it annually, may maintain trespass against any person, even the former rightful owner of the soil; and that the farm occupied by the defendants, being bounded in front by fixed and durable monuments, to wit, the stake by the side of the mill pond near the bridge on the meadow brook, and an ash tree by the side of the mill pond, and running from one of those monuments by the side of the mill pond to the other, they cannot hold beyond the monuments and the side of the mill pond as it is during the usual spring freshets. The Judge instructed the jury, that the plaintiff had no title to the meadow, because it had been previously conveyed to *Jones*, and could not recover for the grass cut thereon; but if there had been a cutting proved on the land purchased of *Ellesmere*, he might recover therefor. The jury returned a verdict for the plaintiff, assessing the damages at four dollars.

If the instructions were correct, judgment was to be rendered on the verdict; and if not, a new trial was to be granted.

The case was argued in writing.

*Lowell, pro se,* admitted that by the common law, the grantee of land, bounded by or fronting on fresh water rivers, holds to the thread of the river. *Dav. Rep.* 149; 4 *Burr.* 2162; *Kent's Com.* 411 to 430; *Angell on Water Courses,* 3 to 10. The same principle is decided or recognized as the law of this country in *King* v. *King,* 7 *Mass. R.* 496; *Lunt* v. *Holland,* 14 *Mass. R.* 149; *Hatch* v. *Dwight,* 17 *Mass. R.* 289; *Ingraham* v. *Wil-*

*Kinson,* 4 *Pick.* 268 ; *Morrison* v. *Keen,* 3 *Greenl.* 454 ; *Tyler* v. *Wilkinson,* 4 *Mason,* 397 ; *Pinkerton* v. *Sedgley,* 4 *Greenl.* 273 ; *Claremont* v. *Carlton,* 2 *N. H. Rep.* 371 ; 5 *Cowen,* 216 ; 6 *Cowen,* 518, and note on 536 ; 5 *Wend.* 423. The limitation of the principle is equally clear, that where the land granted is described as bounded by fixed and permanent monuments, without the edge or margin of the river, intended to bound the length of the lot as extending to or from the river, and not the width of the lot on the river, the grantee cannot hold beyond the monuments. This limitation or exception to the general rule, is found in most of the cases cited. He commented on these cases, and cited in addition, *Hargrave's Law Tracts,* 5, 8, 9 ; and *Waterman* v. *Johnson,* 13 *Pick.* 261. He contended, that this case fell within the limitation of the rule; and that this construction was aided by the deed of *Scott* to *Hanscomb.* And he urged, that if it did not, there was such latent ambiguity in the language, that under the case of *Waterman* v. *Johnson,* already cited, it might be explained by parol ; and that thereby it appeared, that the meadow was not included in the description in the deeds. He also contended, that he was entitled to hold by an adverse possession of more than twenty years.

*Mellen,* for the defendants, argued, that the ruling of the Judge was correct. As the mortgage deed was prior to any title of the plaintiff, if the meadow was conveyed thereby, it is now the property of the defendants. As the course in the deed is " by the said pond to the first mentioned bound," the words " at a stake by the side of the mill pond," or *to* such stake, are wholly immaterial, unless to determine the extent upon the pond. The language used in the mortgage deed passes the land to the thread of the river, and of course includes the meadow. The cases cited by the plaintiff fully establish this principle. The land conveyed by the deed to *Jones* is bounded on the pond ; and a mill pond, as this was, is a river or stream stopped or raised by a mill dam. The overflowing in the spring neither extends the rights of the owner on one side, nor restricts those of the owner on the other. The *claim* set up by *Hanscomb* can give him no title, nor can it alter the legal construction of the deed. Being the mortgagor, he can gain no title by possession against the mortgagee before foreclosure, and

twenty years have not elapsed since the entry. The cutting of the grass, however, on uninclosed land cannot give a right thereby. The deed from *Scott* to *Hanscomb* is described in some degree differently from the mortgage, but whether the same land is conveyed by both or not, is wholly immaterial. The meadow is included in the mortgage, and the plaintiff has no title, but by a subsequent conveyance of the same land.

The opinion of the Court was drawn up by

SHEPLEY J. — It is too well settled to admit of doubt, that when land is bounded upon a river or stream, the grantee will hold to the thread of the stream. Nor is there any doubt that land may be so bounded upon the bank, or by monuments standing near but without the edge of the stream, as to exclude the stream from the conveyance. When the monument is stated to stand by the river or by the edge of the river, the same idea is communicated as if it had stated, that the line of boundary commenced by the river or by the edge of the river, instead of at the monument thus standing, unless from other parts of the conveyance it should clearly appear, that such was not the intention.

The case finds, that the premises in controversy are meadow lands flowed during the spring of the year by a mill dam across the river below, but not so flowed during the summer season.

Both parties derive their title from *Nathan Hanscomb*, the defendants having the elder title ; and the question is, whether the premises had been conveyed by him before he conveyed them to the plaintiff. And that is to be determined by the construction put upon the deeds, unless the language is so ambiguous as to authorize the aid of parol testimony. The deed from *Hanscomb* to *Jones*, under whom the defendants claim, begins the line of boundary at meadow brook, " at a stake *by the side* of the mill pond," the other lines being described, it returns " to a stake *by the side* of the river or mill pond, thence *by the said pond* to the first mentioned bounds."

It will be perceived, that the line in effect commences by the side of the mill pond, returns to the side of it, and runs by it from one point to the other. It is said, that this deed may be explained by the deed from *Scott* to *Hanscomb* of the same lands. The line

as described in that deed begins at meadow brook, "at a stake *by the side* of the pond, and the other parts being described, it returns " to an ash tree *by the side* of the mill pond, then *by the side* of the mill pond to the first mentioned bounds." The only difference perceived where the line is adjoining the pond is, that one deed describes it as running *by the pond* and the other *by the side* of the pond; and the difference in the words, does not communicate any difference of intention. In neither is the line disjoined or separated from the pond; and such language when used with reference to a river or stream, not flowed into a pond, would not admit of doubt.

In the case of *Hathorne* v. *Stinson*, 3 *Fairf.* 183, it was decided by this Court, that a lot of land bounded upon a pond artificially raised by the flowing of a stream by a mill dam, was not limited to the margin of the pond, but included the land thus flowed. The same opinion is expressed in the case of *Waterman* v. *Johnson*, 13 *Pick.* 261, with a possible qualification, that the pond may have acquired by becoming permanent another well defined boundary. The pond named in these deeds cannot be regarded as having acquired a permanent boundary, for the case finds, that it yearly ceases to exist, the water being confined within the banks of the river.

As the land is clearly bounded by the mill pond, a well established rule of construction carries it to the centre of the stream thus flowed; and parol testimony cannot be admitted for any other purpose, than to make known the kind of pond described as a mill pond. For this purpose it may be admitted, for if it had been a natural pond not artificially raised by the flowing of a stream, the title would have been limited by the margin of the water, as decided in the case of *Bradley* v. *Rice*, 13 *Maine R.* 198.

The facts do not show such a disseizin of this close committed and continued against the owner as to authorize an action of trespass to be maintained against him.

*Judgment on the verdict.*