LAND AND LAKE ASSOCIATION, Appellant, *v.* WALTER H. BEARDSLEY, Respondent.

Fourth Department, March 27, 1918.

**Real property — action to restrain continued trespass — claim of title by defendant — deed establishing defendant's title.**

Action to restrain the defendant from committing a continuous trespass upon a strip of land bounded by a lake and lands under the waters of said lake to the center thereof. The defendant claims ownership of the lands in question.

Evidence and the deed under which the defendant claims title examined, and *held*, to establish the defendant's title, especially in view of the prac-

tical construction put upon said deed by the parties interested for over sixty years.

Where a grant of lands is so framed as to touch the waters of a non-navigable lake the title to the lands underneath the lake to its center passes to the grantee, unless they are excluded by express exception. And this is true although the lines of the survey as stated in the description do not touch the lake.

In construing a deed most favorably to the grantee the word " and " in a description may be construed to mean " or."

A description of land which runs along the road and north side of a lake to a birch conveys to the grantee a title to the land and the land under the water of the lake to the center thereof.

APPEAL by the plaintiff, Land and Lake Association, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Columbia on the 13th day of March, 1917, dismissing the complaint upon the decision of the court after a trial before the court without a jury.

This appeal was transferred from the Third Department to the Fourth Department. (181 App. Div. 913.)

*Martin L. Stover,* for the appellant.

*John L. Crandell,* for the respondent.

DE ANGELIS, J.:

This appeal has come to us from the Third Judicial Department.

The judgment under review dismissed the complaint upon the merits. The plaintiff, claiming to be the owner of a narrow strip of land bounded southerly by Copake lake and the land extending therefrom underneath the waters of the lake to the center thereof together with the waters thereon, brought the action to restrain the defendant from committing continuous acts of alleged trespass upon such premises. The defense was that the defendant owned such premises. The questions for our consideration are whether or not the grantee in a deed of conveyance executed and delivered in the year 1858 by persons who at that time owned a large tract of land including the premises in question, acquired title to the premises in question by means of such deed of conveyance, and whether or not the defendant and his predecessors in

Fourth Department, March, 1918.    [Vol. 182.

title have acquired title to the premises in controversy by adverse possession.

Copake lake is an inland, non-navigable and non-tidal lake or pond, situated in the town of Copake, Columbia county, N. Y., has a superficial area of 500 acres, more or less, is 6,800 feet long, 2,500 feet wide and is five miles around. In the locality involved that which is referred to as the *northerly* boundary of the lake is more nearly the *easterly* boundary. This may explain some confusion, for in some instances an actual northerly direction is referred to as such.

The strip of land in controversy is bounded northerly by the beaten path of a public highway which has been in existence from a time prior to the execution and delivery of the deed of conveyance referred to. This deed was given by Mary Thomson and others to John C. Williams, is dated April 1, 1858, was recorded May 1, 1858, in the Columbia county clerk's office and the premises conveyed thereby are described therein as follows:

" All that certain piece, parcel or farm of land situate, lying and being in the Town of Copake aforesaid, and known as Farm No. 37 on Thomson's Map & Field Book of Great Lot No. one of the Manor of Livingston and by said Field Book and survey bounded and described as follows: Begins at the N. W. Corner at a Black Oak a corner of No. 36, thence S 75° E 3 chains 90 links along Farm No. 36, to a stake S 40° E 20 chains along the same to a White Oak East side of the road S 85° E 4 chains 50 links along the same to a stake S 60° E 2 chains 50 links along the same to a Stump S 31° W 17 chains 20 links along the same to a stump S 50° E 16 chains 70 links along the same to a Hickory S 21° E 5 chains 50 links along the same to a chestnut due east 10 chains along the same to a chestnut S 16° W 12 chains 30 links to a Black Oak in the line of Farm No. 30 S 85° W 19 chains 30 links along No. 30 to a Chestnut West side of the road N 17° W 4 chains along the Road and Farm No. 38, thence N 14° W 11 chains along the same farm N 58° W 9 chains along the same to a Chestnut at a Cross road S 18° W 8 chains along Copake Road to a small white oak N 55° W 10 chains along Farm No. 38 to Poplar S 63° W 12 chains along the same to a white oak N the road at Copake N 29°

W 21 chains 30 links along the road and North side the Lake to a Birch N 61° E 10 chains 90 links along Farm No. 58 to a stake N 24° W 85 chains 25 links along the same to a poplar tree N 52° E 15 chains along the same to a Black Oak N 34° E 11 chains 88 links along the same to the Beginning Containing in all One Hundred and Eighty Five Acres and Three roods of Land, be the same more or less being conveyed and taken according to said Map and Field Book Subject to a lease of said farm given to said Williams by Mary Livingston, dated 1 April 1840," etc.

The trial court has determined that the premises in controversy are included in the description just given.

When the deed in question was given (1858) land was cheap and as a rule people were not thinking of reserving lakes and the lands immediately surrounding lakes for pleasure purposes. If the grantors in the deed to John C. Williams had intended to reserve the lake and not include the frontage on the lake in the conveyance, they should have made it plain. If the lake and the frontage on the lake were to have been excepted from the conveyance for the use of summer residents and their cottages the space would not have been the trifling fringe of worthless land in controversy, but ground sufficient for such purpose. Both the surveyor who testified for the plaintiff and the surveyor who testified for the defendant agreed that the description of the property contained in the deed was not accurate. The only evidence of the extent of the road in question is its beaten track. The southerly line of the road may well be regarded as the lake. The bank is from fifteen to twenty-five feet high in front of the premises described in the deed and the beach below is narrow and in some instances there is no beach, only the rocks, and in other places the beach does not exceed ten feet in width. The beaten path of the highway is close to the top of the bank. It is not improbable that the level of the lake has receded since 1858 and that the margin of the water might then have been nearer the beaten path of the road than it is now.

I think that we should adopt the conclusion of the trial court, under the authorities. I call attention particularly to this language in the description, supplying the word

" thence " which in the description is understood, " thence S 63° W 12 chains along the same to a white oak N the road at Copake; thence N 29° W 21 chains 30 links *along the road and North side the Lake* to a Birch," etc. (The italics are mine.) Within the rule laid down in *Gouverneur* v. *National Ice Co.* (134 N. Y. 355) this conveyance gave the grantee title to the land and water in controversy, as we construe the holding of the Court of Appeals in that case and the rule there laid down.

Where the grant is so framed as to touch the water of the lake, the title of the land underneath the lake to its center passes to the grantee under the grant. If the parties mean to exclude it, they should do so by express exception.

We assume, as we are permitted to assume, in such a case as this, that the " *white oak N the road at Copake* " was selected to mark the line between lot No. 37 and lot No. 38 because it was a substantial monument and there was no other substantial monument in such line nearer the lake and not in the lake or the roadway; and not as a delimitation of the line between lot No. 37 and lot No. 38. The fact that the lines of the survey as shown by the description do not touch the lake does not overcome the presumption that the title passed to the center of the lake. The fact that the acreage as mentioned in the description is contained within the lines mentioned does not overcome this presumption. If the description omitted any reference to the road, there would be no doubt that the title would go under the description to the center of the lake. If it contained no reference to the lake, it would go to the center of the road. (*Van Winkle* v. *Van Winkle,* 184 N. Y. 193.) If we give full force to the rule of construction that must favor the grantee, it seems entirely reasonable to say that the language " along the road " took the strip of land to the center of the road and the language " and North side the Lake " took the additional strip of land to the lake, and, hence, to the center of the lake. The conjunction " and " is there used in its familiar sense, to wit, " in addition to."

In another view of the situation and following the rule of construction favorable to the grantee, we suggest that " and " in the description referred to may be regarded as

used in the sense of " or." This is not unusual. (*Ludlow* v. *City of Oswego*, 25 Hun, 260, 261.) We have already suggested that the southerly boundary of the road was the lake and that the strip of land was of no value at the time of the conveyance, so that the conveyancer might well have made the boundary along the road or north side of the lake, intending thereby to give to the grantee the land down to the lake and hence to the center of the lake.

But it may be objected that the language " and North side the Lake " only took the land to the " margin " or " edge " of the water of the lake. This objection calls for a consideration of the sense in which the word " side " is used. Assuming that the portion of the lake in question is its northerly side, that side would extend to the center of the lake. That is a common meaning of the word *side*. Such meaning of the word would give the expression in this description precisely the same effect as though the conveyancer had used the language " along the road and the lake " or " along the road and the lake, north side."

We think that the construction thus given by us to the deed in question is strengthened by the practical construction put upon it for nearly sixty years by the parties interested.

The trial court has found in the case at bar that the defendant and his predecessors in title as against the plaintiff acquired title to the premises in controversy by adverse possession. We think this finding is supported by the evidence.

It follows from the foregoing that the judgment appealed from should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.