ANITA B. WHITE, Respondent, *v.* KNICKERBOCKER ICE COMPANY et al., Appellants.

(Argued June 11, 1930; decided July 8, 1930.)

*Allan R. Campbell* and *Frank R. Bruce* for appellants. In accordance with public policy, a deed will be held not to separate the upland from the adjoining land under water unless that land is expressly and clearly reserved. (*Luce* v. *Carley*, 24 Wend. 451; *Seneca Nation* v. *Knight*, 23 N. Y. 498; *Gouverneur* v. *National Ice Co.*, 134 N. Y. 355; *Smith* v. *Bartlett*, 180 N. Y. 360; *Fulton L., H. & P. Co.* v. *State*, 200 N. Y. 400; *Matter of City of New York*, 212 N. Y. 325; *Matter of Ladue*, 118 N. Y. 213.) As the land under water was not expressly and clearly reserved, it passed by the deed. (*Calkins* v. *Hart*, 219 N. Y. 145; *Clark* v. *Durland*, 35 App. Div. 312; 104 App. Div. 615; 187 N. Y. 560; *Luce* v. *Carley*, 24 Wend. 451; *Seneca Nation* v. *Knight*, 23 N. Y. 498; *Matter of City of New York*, 212 N. Y. 325; *White's Bank* v. *Nichols*, 64 N. Y. 65; *Boston* v. *Richardson*, 13 Allen, 146; *Freeman* v. *Bellegarde*, 108 Cal. 179; *Land & Lake Assn.* v. *Beardsley*, 182 App. Div. 550; *Winslow* v. *Cooper*, 104 Ill. 235; *Smith* v. *Bartlett*, 180 N. Y. 360; *Holloway* v. *Southmayd*, 139 N. Y. 390.) In cases of disputed title to land under water, the conduct of the parties, showing their own practical construction of the title documents, is a competent consideration in determining the legal effect of the documents. (*Trustees of Brookhaven* v. *Strong*, 60 N. Y. 56; *Trustees of East Hampton* v. *Vail*, 151 N. Y. 463; *Stewart* v. *Turney*, 237 N. Y. 117.)

*David Paine, J. Du Pratt White* and *Graham D. Mattison* for respondent. The conveyance by William Smith did not carry the land under water. (*Fulton Light, Heat & Power Co.* v. *State of New York*, 200 N. Y. 400;

*Gouverneur* v. *National Ice Co.*, 134 N. Y. 355; *Commonwealth Water Co.* v. *Brunner*, 175 App. Div. 153; *Bradley* v. *Rice*, 13 Me. 198.) A way of necessity was reserved by operation of law. (*Empire Bridge Co.* v. *Larkin Soap Co.*, 59 Misc. Rep. 46; *Voorhees* v. *Burchard*, 55 N. Y. 98; *Valentine* v. *Schrieber*, 3 App. Div. 235.)

CRANE, J. William Smith of the town of Clarkstown, Rockland county, on the first day of May, 1841, conveyed to George E. Felter of the same place, certain lands adjoining the southern shore of Rockland lake, by description reading as follows: " Beginning at the south east corner of said lot in the middle of the public road that runs along the south side of the Rockland Lake it being also the south west corner of the land of Garret Henion thence running northerly along the land of said Garret Henion to the Rockland Lake thence westerly along the south side of the Rockland Lake to the land of the heirs of John Smith deceased thence running southerly along the land of the said heirs of John Smith deceased to the middle of the public road aforesaid thence easterly along the middle of the said road to the place of beginning containing about two acres of land be the same more or less with the appurtenances and all the estate title and interest of the said party of the first part therein."

Through mesne conveyances the Knickerbocker Ice Company became the owner of a sixteen-foot strip running along the edge of the lake, which on the plaintiff's Exhibit No. 1 is designated by the numeral II. The plaintiff, through similar conveyances, is now the owner of the remaining portion of the upland, designated on said exhibit by the numeral I. She has no means of reaching the lake except to pass over the property of the Knickerbocker Ice Company.

In 1926 plaintiff also took a deed from Smith's heirs to at least an undivided two-thirds interest of the land under water adjacent to the shore, which under the

rulings in *Calkins* v. *Hart* (219 N. Y. 145) is a triangular gore formed by the lines running at right angles to the shore and center line of the lake. As William Smith at the time of his conveyance to Felter in 1841 did not own any other land contiguous to the said land under water in front of the premises conveyed to Felter, it is the claim of the plaintiff in this action that there was reserved in him as a way of necessity an easement over Felter's land to the public road, which was described as running along the south side of Rockland lake. Under present conditions this easement would give to the plaintiff the right of access over the land of the Knickerbocker Ice Company from her upland to the lake, or this portion of Rockland lake in front of her property, and designated on plaintiff's Exhibit No. 1 by numeral III.

Rockland lake is about one mile long and three-quarters of a mile wide. The defendants apparently concede that if William Smith had reserved by his deed the land under water in front of the property conveyed to Felter, the plaintiff is entitled to an easement by way of necessity, so we shall not pause to consider the nature of such an easement as applicable to the facts in this case.

The rights of the respective parties, therefore, depend upon the interpretation to be given to the Smith deed. Both sides rely upon *Gouverneur* v. *National Ice Co.* (134 N. Y. 355).

The legal effect of a conveyance is determined by the terms employed. (*Smith* v. *Bartlett*, 180 N. Y. 360.) Each case, however, depends largely on its own facts. By the above description, did the words, " thence westerly along the south side of the Rockland Lake," exclude the land under water in front of and adjacent to land conveyed to Felter? Upon the determination of this question rest the rights of the parties to this litigation.

In order to focus our attention upon the facts it is well to state again some of the old and well-settled rules. Where a grant is so framed as to touch the water of a

river, and the parties do not expressly except the river, one-half of the bed of the stream is included by construction of law. The value, such as they have, of small non-navigable lakes and ponds, as a general rule, is mainly in their relation to adjacent lands. If the parties mean to exclude the land under water, they should do so by express exception; the restriction ought to be framed in very plain and express words. (*Gouverneur* v. *National Ice Co., supra; Seneca Nation of Indians* v. *Knight*, 23 N. Y. 498, p. 500.) The rule which has been continuously followed is best expressed by COWEN, J., in *Luce* v. *Carley* (24 Wend. 451): " Where the grant is so framed as to touch the water of the river, and the parties do not expressly except the river, if it be above tide, one-half the bed of the stream is included by construction of law. If the parties mean to exclude it, they should do so by express exception. Without adhering rigidly to such a construction, water gores would be multiplied by thousands along our inland streams small and great, the intention of parties would be continually violated, and litigation become interminable."

A description carrying the boundary " by the shore " is such an express restriction (*Child* v. *Starr*, 4 Hill, 369, 375); likewise, " to the bank " (*Halsey* v. *McCormick*, 13 N. Y. 296). On the other hand, " along said pond," was held in the *Gouverneur* case not to be such a restriction, and carried title to the center of the pond.

The Court of Errors in *Child* v. *Starr* (*supra*, at p. 373) said: " Where the grant to the riparian proprietor has no other boundary on the *side* thereof which is adjacent to the river but the stream itself, the legal presumption is that his grantor intended to convey to the middle of such stream. * *. * Running to a monument standing on the bank, and from thence running *by the river* or *along the river, etc.*, does not restrict the grant to the bank of the stream."

These principles of law as settled by the courts of this

State, were summarized by GRAY, J., in *Fulton Light, Heat & Power Co.*, v. *State of New York* (200 N. Y. 400, p. 417), and the rule that if the grantor desires to retain his title to the land under water, he must do so by express words or by such a description as clearly excludes it from the land conveyed, was reiterated by ANDREWS, J., in *Stewart* v. *Turney* (237 N. Y. 117, 121).

The description which runs the boundary *by* the river or pond, or which is so framed as to *touch* the water of the river or pond, carries title to the center thereof. It is not a clear and express restriction of the title to the upland. (*Luce* v. *Carley, supra; Gouverneur* v. *National Ice Co., supra.*) The description in *Hardin* v. *Jordan* (140 U. S. 371, p. 374), which carried title to the land under water was, " along the margin of the lake."

The conclusion to be drawn from these cases appears to be that if the description runs the title along dry land such as the bank or the shore, there is an express restriction which excludes or reserves title in the river or pond; whereas, if the boundary touches the water or is along the water or by the water, and not dry land, the presumption remains that title is carried to the center of the river or pond.

The Smith deed carried the boundary " to *the* Rockland Lake "— all of it — not to the shore or to the bank or to the edge, or even to the side of the lake. It then ran along " the south side of the Rockland Lake." The point, therefore, ran from the lake as a body of water, along the side of that water, which must be the same in point of contact as the water itself. We cannot imagine the minutest distance between a point which is *by* the lake, and one the *side* of the lake; both points touch the water. The imaginary line drawn from a point which is designated as " the Rockland Lake " along the side of the lake is the same as saying, " by the lake." Any attempted distinction would be so highly artificial and mythical as to render the above rules of interpretation

useless, as well as meaningless. The rule reiterated in all the cases is that a grant of land adjacent to a small lake carries title to the center thereof, unless the presumption is negatived by express words or by such a description as *clearly* excludes it from the land conveyed.

The Supreme Court of Maine, in *Lowell* v. *Robinson* (16 Me. 357), held that a description commencing at a stake by the side of a mill pond, and from thence running to another stake " by the side of the river or mill pond," extended the grant to the thread of the river.

The deed itself, moreover, is so phrased as to indicate the intention of the grantor to include the land under water, not to exclude it. The word " side " has many meanings. It may not always refer to the border or edge of the water of a lake; it may refer to any part or position viewed as opposite to or contrasted with another, as the south side or north side of the pond or lake. (Webster's New International Dictionary.) Whether the one meaning or the other be intended depends entirely upon the context. (*Winslow* v. *Cooper*, 104 Ill. 235, p. 243.) The deed of William Smith indicates that the word " side " was used in this latter sense. The point of beginning is at the southeast corner in the middle of the public road that runs along the south side of Rockland lake. " Side," as used at this point, means the southerly portion of the lake. The road did not touch the lake, although it came very near to it. The road was on the south side or portion of the lake. There can be no uncertainty of the meaning of the word " side " as used in connection with the word " road." Why should it not have the same meaning when used a few lines below? The description continues: " running northerly along the land of said Garret Henion to the Rockland Lake." If the grantor had intended to go no further, the most natural thing to say would have been, " to the edge or margin of the lake." Apparently he had no such intent in mind. Continuing, the description reads: " thence

westerly along the south side of the Rockland Lake to the land of the heirs of John Smith." This has reference to the extent or distance of the westerly line on the south side of the lake, and " side " here likewise means the southerly portion. of the lake. Transposed, the description would read, " running northerly along the land of said Garret Henion to the Rockland Lake, thence westerly *along the lake on the south side* to the land of the heirs of John Smith." In other words, when we find that " side " has been used by the grantor with one meaning, we should give it a similar meaning, when used again, unless the context indicates a different intention. The south side of Rockland lake, as used in the deed, is the same as Rockland lake on the south side.

That this was and is the meaning of the description in this deed is apparent from the circumstances of the property at the time Smith conveyed it to Felter. The conveyance carried all the upland down to the water, and under the presumptive rule, carried title to the center of the lake. If Smith, by the words of the deed, reserved title to the triangular gore in front of this property, he was completely shut off on all sides. The trial court found that at the time of the conveyance to Felter, William Smith did not own any land contiguous to said land under water, and that there existed no ingress to said land under the waters of said Rockland Lake — being the land marked III on plaintiff's Exhibit 1, except over the land so conveyed by him to said Felter, being land marked I and II on said exhibit. The land under water surrounding him was private to the same extent as other real estate (*Halsey* v. *McCormick*, 13 N. Y. 296, 298), and user of it without permission would make him a trespasser. (*Calkins* v. *Hart*, 219 N. Y. 145.) Reserving to himself this gore of water, the only access he would have to the upland would be a way of necessity over Felter's property. Naturally one asks what purpose or use could be made of such an anomalous reservation.

Smith, so far as this record shows, and his family never claimed to have any such title, and the claim, if it ever existed, has been raised for the first time in this litigation. The mere failure to assert a right is no indication that it does not exist, especially in connection with real estate titles, but when there may be a question as to the meaning of words having more than one significance, the action of the parties has some bearing on the case. The ice company for years cut ice upon this triangular gore, and the public have used it without objection from Smith or his heirs.

This meaning of the word " side," as used in descriptions of this nature, finds support in *Land & Lake Assn.* v. *Beardsley* (182 App. Div. 550, p. 554, 555), where the words used were, " along the road and North side the Lake to a Birch." The court said: " This objection calls for a consideration of the sense in which the word ' side ' is used. Assuming that the portion of the lake in question is its northerly side, that side would extend to the center of the lake. That is a common meaning of the word *side*. Such meaning of the word would give the expression in this description precisely the same effect as though the conveyancer had used the language ' along the road and the lake ' or ' along the road and the lake, north side.' " See a like meaning of the word " side " in *Koerner* v. *Deuther* (143 Fed. Rep. 544, 545).

The distinction between the rule as applicable to rivers and lakes and that relating to the conveyances of land adjacent to highways is referred to in the *Gouverneur* case. Another difference, not there mentioned, is the easement which a property owner has in the street as a highway. Even if the grantee of land adjacent to the highway takes no fee in the street, he may use it as a public highway and may not be deprived of the easements of light, air and access without compensation. (*Holloway* v. *Southmayd*, 139 N. Y. 390, 401.) Such easements, however, do not follow the grant of land adjacent to streams

and lakes. If the grantee does not get the land under water, he gets no rights to go on it for any purpose. (*Calkins* v. *Hart*, 219 N. Y. 145.)

For the reasons stated, the deed of Smith to Felter carried the land under water in the lake to the center thereof. The complaint should have been dismissed.

The judgment of the Appellate Division and that of the Special Term should be reversed, and the complaint dismissed, with costs in all courts.

CARDOZO, Ch. J., KELLOGG, O'BRIEN and HUBBS, JJ., concur; POUND, J., not voting; LEHMAN, J., not sitting.

Judgments reversed, etc.