## Third Department, March, 1936.

HAROLD T. CONFER and Another, Appellants, v. RUTH D. PIRMAN and Another, Respondents.

Appeal from a judgment of the Supreme Court, entered in the Warren county clerk's office on August 9, 1935.

Hutchins pond is an inland body of non-navigable water located in Great Lot 60, in Hyde township, county of Warren, N. Y. In 1850 one Brown conveyed to one Morehouse, defendants' predecessor in title, a portion of such lot described as follows: "All that certain piece of land situate lying in the Town of Warrensburg, County of Warren, and in the easterly part of the southwesterly quarter of Great Lot 60, Hyde Township, and is that part of said quarter that *lys* on the east side of what is known as the Hutchins Pond untill strikes the outlet of said pond, and thence south east from the outlet of said pond until it strikes the lands adjoining."

In 1858 Brown conveyed to Wells, under whom plaintiffs claim, that portion of the southwest corner of lot 60 which he had not conveyed to Morehouse. The premises are described in the deed as follows: "All that certain lot, piece or parcel of land situate, lying and being in the county of Warren and State of New York, bounded and described as the southwest quarter of Lot Number 60 in Hyde Township estimated to contain one hundred and twenty acres be the same more or less. Excepting and reserving all that part of the second described piece of land as described in a deed executed by Hougal Brown and wife to Edward Morehouse dated the 25th day of October, 1850, and recorded in Warren County Clerk's Office in Book T of Deeds at page 75."

Plaintiffs contend that by the deed from Brown to Morehouse no portion of Hutchins pond, or of the land lying under the waters thereof was conveyed and that they are the owners of the entire pond. Defendants contend that the deed in question conveyed title of the pond to the center line thereof. The trial court, on the authority of *White* v. *Knickerbocker Ice Co.* (254 N. Y. 152), sustained the contention of defendants and held that defendants' title extended to the middle of the stream.

Judgment affirmed, with costs.

Rhodes, McNamee, Bliss and Heffernan, JJ., concur; Hill, P. J., dissents with an opinion.

HILL, P. J. (dissenting). The question to be determined is the ownership of Hutchins pond, which is a body of water in Warren county about 2,400 feet long and 550 feet across at its widest point. Plaintiffs assert title to the entire pond and defendants to the easterly half, which lies in the southwest quarter of Great Lot No. 60 in Hyde township, town of Warrensburg. Plaintiffs own all of Great Lot No. 60 except the part owned by defendants. The dispute concerns defendants' westerly and plaintiffs' easterly line. In the deed of conveyance to defendant Ernest J. Pirman the lands are described: "A part of Lot No. 60 in Hyde Township, and being that part of Lot No. 60, and in the southwest quarter thereof, that lies on the east side of what is known as Hutchins Pond; running southerly along the water edge to the outlet of said pond; thence southeast from the outlet of said pond until it strikes the line of lands adjoining. Containing 75 acres, be the same

more or less." Following a deed dated October 28, 1862, in six mesne conveyances the westerly boundary of the defendants' premises is located by the statement that the land conveyed is " on the east side of what is known as Hutchins Pond running southerly along the waters edge to the outlet of said Pond." In two earlier deeds, one recorded 1854, the other 1857, the corresponding description is: " that part of said quarter that lies on the east side of what is known as the Hutch Pond and runs along thence southerly on the East Side of said Pond untill it intersects the outlet of said Pond." The next earlier grantor, Hougal Brown, was the common owner of defendants' lands and of the portion of plaintiffs' which lie in Great Lot No. 60. The description of defendants' land in this deed from Brown to More-house follows: "All that certain piece of land situate * * * in the easterly part of the south westerly quarter of Great Lot 60, Hyde Township, and is that part of said quarter that lys (sic) on the east side of what is known as the Hutchins Pond untill strikes the outlet of said pond." After his deed to Morehouse, Brown conveyed to Wells the lands in Great Lot No. 60 which plaintiffs now own. The description follows: "All that certain lot, piece or parcel of land situate, lying and being in the County of Warren and State of New York, bounded and described as the southwest quarter of Lot Number 60 in Hyde Township estimated to contain one hundred and twenty acres be the same more or less. Excepting and reserving all that part of the second described piece of land as described in a (sic) and executed by Hougal Brown and wife to Edward Morehouse." Defendants base their claim of ownership to the center of the pond upon the description in the deed from Brown to Morehouse. It may be mentioned that defendant Ernest J. Pirman in a deed drawn in 1933 to his wife, the other defendant, described the westerly boundary as " the center line of what is known as Hutchins Pond." This last conveyance seems to me to be without significance.

The legal effect of a conveyance is to be determined by the language used therein and the facts surrounding the grant. (*White* v. *Knickerbocker Ice Co.*, 254 N. Y. 152, 155.) The facts in the *White* case differ so markedly from those in this case that the language used in that opinion should not be applied generally here. There Smith, the owner of a small rectangular parcel adjacent to Rockland lake, conveyed. The description of the first course ran northerly " to the Rockland Lake thence westerly along the south side of the Rockland Lake." Plaintiff became the owner of all the parcel except a strip sixteen feet wide across the northerly side and adjacent to the lake which was owned by defendant. This sixteen-foot strip cut off plaintiff's land from the lake. Plaintiff then procured a deed from Smith's heirs of the land under water adjacent to the parcel which he had conveyed as first mentioned. A suit was brought to establish a right-of-way over defendant's sixteen-foot strip as a way of necessity to reach these newly-acquired lands under water from the uplands. It was decided that the deed first mentioned conveyed Smith's land under the lake. In *Smith* v. *Bartlett* (180 N. Y. 360), under the facts surrounding the grant, it was determined proper to apply the fresh water rule to tide waters. The opinion quotes and approves the following: " The natural presumption where a deed conveys land bordering on a stream or highway is, that the grantor means to convey what he owns, and not to reserve a strip of land of no value to him, but the loss of which to the grantee might be productive of great injury. He has power by apt words to reserve what, and as much as he pleases, or so to frame the language of his conveyance as to limit the land conveyed to the line of the stream or highway,

without extending further, and, in all such cases, courts are bound to give effect to his expressed intention." The common grantor, Hougal Brown, owning all of the southwesterly quarter of lot 60, by his conveyance granted to defendants' predecessors " the easterly part " thereof, " that part of said quarter that lys (*sic*) on the east side of what is known as Hutchins Pond until strikes the outlet of said Pond." Brown still owned the westerly part of the quarter. Thus the theory which I quote from the *Bartlett* case, " that the grantor means to convey what he owns," does not apply, and by reserving the land under the waters of the pond he did not " reserve a strip of land of no value to him." Brown by apt words could reserve the pond. When he conveyed only the land that " lys (*sic*) on the east side of " Hutchins pond, words reserving lands which were west of the east side of the pond would have been redundant. From 1865 for nearly seventy years seven grantors in defendants' chain of title indicated what they each thought to be the western boundary of the land, the description in each deed being substantially " That part of said quarter that lies on the east side of what is known as the Hutch-Eans Pond running southerly along the water's edge to the out let of the said Pond," thus excluding any portion of land west of the easterly " water's edge " of the pond.

In *Starr* v. *Child* (5 Den. 599) it was decided that land described as being on the west side of the Genesee river, the easterly boundary being " on the bank of the river agreeable to the traverse," did not include the land under water to the center of the river. Also in *Child* v. *Starr* (4 Hill, 369) a conveyance of land described as a mill lot with the line running " eastwardly to the Genesee River, thence north-wardly along the shore of said river to Buffalo Street," did not include any part of the bed of the river, but only the land to low-water mark, the chancellor stating: " Running to a monument standing on the bank, and from thence running *by the river* or *along the river &c.*, does not restrict the grant to the bank of the stream; for the monuments in such cases are only referred to as giving the directions of the lines *to the river*, and not as restricting the boundary *on the river*. If the grantor, however, after giving the line to the river, bounds his land by the *bank* of the river, * * * or bounds it upon the *margin* of the river, he shows that he does not con-sider the whole *alveus* of the stream a mere mathematical line, so as to carry his grant to the middle of the river." The same distinction is stated in *Fulton Light, Heat & Power Co.* v. *State of New York* (200 N. Y. 400, 416, 417). The description there started from " a white ash sapling * * * standing on the east shore of the Oswego River." The opinion in discussing the starting point says: " As a boundary of the grant is on a fresh-water river, the location of the monument for the starting point in the sapling is not a delimitation of the westerly boundary line. As the monument could not conveniently or properly be placed in the channel of the river, in placing it on the bank it merely fixed a point in the south line to which line the course from the northerly boundary returned along the river. Such a monument indicates the place of the line, or of its intersection with the stream, and not the end of it. * * * A boundary line, which is described as ' along the shore ' or ' along the bank,' of a fresh-water stream would not extend the grant to the center; for there would be a prescribed limitation of the line to the shore, or bank. But where, as here, the line, when it reaches the river, is then described as running ' along the same,' it will be construed as following the thread of the stream." In *Gouverneur* v. *National Ice Co.* (134 N. Y. 355) the description runs

" to Hinckley pond near a large rock; thence northerly along said pond." The distinction between the words " along the pond " and " along the shore " is pointed out. The latter is held not to include the land under water. To the same effect *Halsey* v. *McCormick* (13 N. Y. 296); *People ex rel. Burnham* v. *Jones* (112 id. 597); *White* v. *Knickerbocker Ice Co.* (*supra*).

Under these authorities, when the defendants purchased the land on the east side of Hutchins pond, they did not receive the title to lands west of the east side of the pond. Plaintiffs are entitled to the relief they seek.

Judgment should be reversed on the law and facts, with costs, and judgment for plaintiffs granted, with costs.