Waters of White Lake, Inc., Respondent, *v.* Charles B. Fricke et al., Appellants.

Third Department, July 2, 1953.

*Lazarus I. Levine* for appellants.

*F. Walter Bliss* for respondent.

BERGAN, J. Plaintiff has obtained a final judgment of injunction restraining defendants from the use of White Lake, which is described in one of the briefs before us as " the largest lake in Sullivan County ". The lake is in a summer resort area and its shores are extensively developed for this purpose. Defendants, except one, own parcels of land having lake frontage. The corporate defendant owns such a parcel and also claims the right to use the lake by virtue of an easement.

The theory of the judgment is that plaintiff is the owner of substantial parts of the land under the lake and from this title has the exclusive right to use the water over this land. The judgment recites the descriptions in the deeds on which plaintiff's claim of title is based, and by reference to a map of the lake, sets forth the areas in which the injunction is to be operative.

A blue line on the map describes the area. In some portions of the lake it follows the shore line; in others it follows the shore line a distance 200 feet out in the water; in others it makes juts into the lake; at one place it amounts nearly to a bisection of the lake by separating two very substantial sectors; at another it takes out of the scope of the judgment a triangular portion of the lake, the apex of the triangle extending toward the center of a narrow neck of water.

We accept the principle for which appellants argue that injunctive interference with the free use of a summer resort lake, the shores of which are held in many diverse titles and the waters of which are extensively used, would not be undertaken by the court unless plaintiff shows a clear title to all the land under water which it claims.

In the second place the court would hesitate to lend its force by the injunctive process to interference with the use of the lake where the plaintiff's ownership was so broken into by other titles that the resulting pattern of ownership would be physically irregular. The feasibility of the injunction would then become a matter of concern.

Beyond all that the court in equity would tend to avoid granting an injunction which would result in a monopoly of waters of a resort lake if that could be done with proper respect for legal titles. We inherit from the common law a reluctance to fortify monopolies by injunction. This hesitancy operates especially in areas where there is residuum of discretion about whether an injunction will be given or withheld.

Even if we take the lines of plaintiff's title to land under the water of the lake just as the Special Term has found them to exist, it makes a fairly debatable case whether it is feasible to enjoin the free use of the lake within those lines. But we think that other adverse titles cut down the area of plaintiff's title to the point that injunctive interference would no longer be feasible.

In the 1860's the owners of the title to all the property now in dispute executed certain deeds to land contiguous with the lake shore. One of those deeds (August 23, 1864) carried the description to a stake and stones " on the shore of the White Lake " and continued " then along the shore of said lake easterly at low water mark " to a point. Another deed (June 26, 1865) carried the description to a birch tree " standing on the lake shore " and continued " then by low water mark " to the beginning. Another deed (June 22, 1864) carried the line " to White Lake " and continued " along low water mark " to

the beginning; another (April 1, 1863) carried the description " to low water mark in White Lake; thence along the lake shore "; another (October 12, 1867) carried the description " to the shore " of the lake and then " along the shore at low water mark." One of these deeds (June 26, 1865) is the source of title of Stanley Williams, one of the defendants here. The other titles thus created are not held by any party to this action.

In *Hammel* v. *Camp Ranger, Inc.* (275 App. Div. 23, 25) this court had before it for construction a deed which carried the line " to Pleasant Pond low water mark, thence * * * along said Pleasant Pond shore " and stated further that the line was " to run along " the pond and " to run to the low water mark thereof." The court held that this description in the absence of other proof of intent carried title " to the center of the pond ".

While the point has been a debatable one in New York as the minority opinion pointed out (p. 28) still we feel bound to follow that case which was affirmed (300 N. Y. 602) in construing the effect of words of description of marked similarity. The decision, indeed, is consistent with the rule followed at common law, that a conveyance of land bounded by a small inland lake or pond usually carries title to the center or the thread of the current unless there is expression to the contrary. (*Hardin* v. *Jordan,* 140 U. S. 371.)

It would be unprofitable to follow in detail the semantic differences which carried such diverse legal consequences from the use of " by the shore " or " to the bank " or " along said pond " (*White* v. *Knickerbocker Ice Co.,* 254 N. Y. 152; *Gouverneur* v. *National Ice Co.,* 134 N. Y. 355; *Halsey* v. *McCormick,* 13 N. Y. 296; *Child* v. *Starr,* 4 Hill 369). It is enough to say that we follow our own decision in construing the effect of similar words.

If we apply to this lake the rule of the *Camp Ranger* case there are areas of the lake in which the injunction has become operative to which plaintiff does not have title. It is true that in all but one of the titles to the center of the lake resulting from these descriptions of the 1860's no defendant shows any present interest. Plaintiff argues from this that the construction which we make " would avail these defendants nothing " since they are not the successors in interest. There is, however, a difference between the right of the defendants to use portions of the lake owned by strangers and the right of the plaintiff to prevent their using portions of the lake owned by strangers. Plaintiff could not have an injunction unless it also had a title.

Plaintiff's brief continues that if the descriptions now discussed carried title to the center of the lake " Perhaps plaintiff could not stop them [defendants] from using the four small piece-of-pie shaped strips of land extending from the shore to the center of the lake, but plaintiff would still be entitled to its injunction against the use of the rest of the lake ". We think, however, that the intervention of these other titles under the water, extending from different shores, as we compare the deed references to the map, and moving in different directions to the center would operate to defeat the relief plaintiff seeks and which it has obtained. Such a truncated injunction would be beyond feasibility.

There are other intervening titles ahead of that acquired by plaintiff which require attention. The owners in the 1860's seemed to have made reservations of the water of the lake apparently then for water power or other similar purposes. We need not discuss these in detail except to say they could not affect the specific earlier deeds we have considered to the extent those deeds are construed to carry title to the center of the lake.

It seems a fair description of the title to say that plaintiff's predecessors ultimately acquired generally whatever the reservation to the water the owners of 1860 had retained. One of the owners in the chain of title by a series of deeds in the 1880's, however, made four conveyances using the expressions " along the low water line " (December 29, 1880) or " following the line of low water mark " (September 24, 1885); or " to low water mark; thence along low water mark " (same date); or " to the low water mark of White Lake; thence along said low water mark " (September 26, 1885), and these seem to cast additional pie-shaped thrusts into the pattern of plaintiff's title and to render an injunction less workable or desirable.

One deed in the chain of plaintiff's title conveys " all the land covered by the waters of White Lake * * * not heretofore conveyed to D. B. Kinne or to the party of the first part." This would mean literally that the grantor continued to reserve what he owned. Defendants argue that if this was a mistake " no correction was ever made and none sought ". Plaintiff does not admit expressly it was a mistake; or say that it should be disregarded, but merely argues that the " reason for such change is obvious " that the previous deed to the grantor had contained the expression " not heretofore conveyed to D. B. Kinne or to the party of the second part." All this may be, as plaintiff says it is, a feeble " attempt to make a point " but in

seeking an equitable remedy as drastic as this one is, the complaining party's chain of title ought to be quite free from arguable issues.

We agree with the Special Term that the corporate defendant has shown no effective general easement in the lake that should be recognized in the judgment. On the whole record we think plaintiff ought not to have an injunction.

The judgment should be reversed and judgment granted for defendants dismissing the complaint, with costs. The appeal from the order refusing a new trial should be dismissed. The order to be entered should be settled on notice.

FOSTER, P. J. (concurring). I concur in the opinion of Mr. Justice BERGAN for reversal except that part which rejects the claim of an easement in favor of the corporate defendant. In my opinion the White Lake Boating and Fishing Corporation acquired the right to use the waters of the lake, for boating, boat livery, bathing and fishing by virtue of an easement that is appurtenant to land under the lake owned by the said defendant. This easement was originally created in the deed from Richard H. Gillespie to Frank Bezer in 1907. In that deed it was said: " It is expressly understood that with this grant the party of the second part is to have all reasonable and proper boating, boat livery, bathing and fishing privileges on all parts of the said lake ". By every canon of construction this language should be held to have created an easement appurtenant to the land granted and not merely a personal privilege or easement in gross. An easement in gross will not be presumed where it can be fairly considered to be appurtenant to land (*Wilson* v. *Ford,* 209 N. Y. 186, 196). It is elementary that where the terms of a conveyance are doubtful the grantee may take the language most strongly in his favor. By a series of mesne conveyances part of the property described in the deed from Gillespie to Bezer passed to the defendant corporation, and the easement originally created attached to every part of such property. Since it became appurtenant in the original deed it is immaterial that in some of the later conveyances it was not expressly mentioned. As against this corporate defendant, at least, the plaintiff therefore had no cause of action.

HALPERN, J. (dissenting). I would affirm the judgment upon the opinion of the court below, if the review is limited to the issues there presented, as I believe that the judgment was entirely sound upon those issues, or I would reverse and order a new trial, if the new issue sought to be raised upon this appeal, is admitted into the case.

As Justice ELSWORTH said in his opinion, " The validity of plaintiff's title under such deed [deed to the plaintiff corporation dated October 10, 1940] does not stand in question here either by way of contrary claim or contrary evidence. Thus is rendered superfluous in this connection any discussion of back title or sufficiency of title ".

The principal defense urged by the defendants upon the trial was that the defendants had acquired an easement for boating, boat livery, bathing and fishing on all parts of White Lake. The trial court found that this easement had not been established and Justice BERGAN's opinion comes to the same conclusion. I concur in that portion of his opinion.

Upon a motion to vacate the judgment and upon this appeal, the defendants' newly retained counsel sought to inject a new claim which had not been presented upon the trial, namely, that one Morrison, the common grantor, had, prior to the conveyance to the plaintiff's predecessor in title, conveyed certain parcels of land fronting on the lake in such terms that the grantees acquired the land under water adjoining the premises conveyed, to the center of the lake. This claim had not been advanced upon the trial and the defendants had offered no proof in support of it but the defendants' counsel, upon an examination of the deeds introduced by the plaintiff in establishing its chain of title, has found certain deeds which he alleges support the claim. There is nothing in the record to show that the defendants have succeeded to the interests of the grantees whose deeds are alleged to have included land under water to the center of the lake. It is stated in the defendants' brief that the defendant Williams has succeeded to a strip of land under water allegedly conveyed by the common grantor by deed dated June 26, 1865, but this statement is based upon an affidavit made upon the motion to vacate the judgment, purporting to show a chain of descent from the grantee in that deed to the defendant Williams; it is not supported by anything in the record of the trial itself.

While the defendants have not connected themselves with the title of the third persons, it is the contention of their counsel upon this appeal that by reason of the conveyances by the common grantor, the ownership of the bed of the lake is so cut up that an injunction against the use by the defendants of the portions of the lake owned by the plaintiff would be incapable of enforcement and that therefore a court of equity should withhold the remedy of injunction.

Even if it is assumed that the descriptions in the deeds to the third persons included land under water to the center of the lake, it is impossible to determine, upon this record, whether the defendants' new claim has any validity. The lands under water alleged to have been so conveyed have not been mapped or plotted and the descriptions are of such a character that they cannot be intelligently related to the plaintiff's lands except with the assistance of a surveyor. The lands under water would presumably consist of triangles of land running to the center of the lake in the shape of pieces of pie. To what extent they would cut up the bed of the lake claimed by the plaintiff, it is impossible to say upon the proof before us.

If this new theory is to be admitted into the case at this stage, the most that the defendants can reasonably ask is that the case be sent back for a new trial. There is certainly no justification for attempting, upon the basis of the defendants' new assertion, to make a final determination at this time that the bed of the lake owned by the plaintiff is so reduced in size or is rendered so discontinuous by the deeds relied upon, as to make it impracticable for a court of equity to protect the plaintiff's title by injunction.

Upon the record as it now stands, the injunction granted by the court below is capable of ready enforcement. The lake is one of substantial size, several hundred acres in area. Looking in a northerly direction, the lake resembles an inverted " L " with a widening at the top and a widening at the bottom and the narrowest part at the angle of the " L ". The plaintiff has been found upon undisputed proof to be the owner of most of the bed of the lake. The plaintiff owns the whole bed, except (1) a cove on the westerly side of the bottom part of the inverted " L ", (2) a segment at the extreme southwesterly corner of the top part, and (3) a marginal strip along the northerly shore of the top part and a similar strip along the southerly shore of the bottom part, 200 feet in width and, at one place for a short distance, 225 feet in width. The area of plaintiff's land under the waters of the lake is 226 acres. The land owned by the plaintiff is clearly marked in blue lines upon a map introduced in evidence and attached to and made a part of the judgment. The lands owned by the individual defendants, from which they carry on their respective boat livery businesses, are clearly marked on the map in green, brown and red colors. These extend a distance of 200 feet into the lake and the defendants are forbidden by the injunction to run their boats into the lake beyond that point. There can be no doubt about the mean-

ing of this or the ability of a court of equity to enforce the decree. The simple and practical effect of the injunction is that the defendants cannot engage in the boat livery business without obtaining a license from the plaintiff similar to licenses which they obtained in the period from 1940 to 1949.

It is important to bear in mind the nature of defendants' businesses and the nature of their use of the lake. The individual defendants operate boat liveries from their respective premises. They rent out boats upon the representation to their customers that they have the right to operate throughout the lake. The defendants transport passengers on pleasure trips and sightseeing excursions throughout the lake and give their customers bathing and fishing privileges throughout the lake. The carrying on of this type of business obviously involves a trespass upon the plaintiff's lands, regardless of the ultimate outcome of the newly raised controversy as to possible ownership by others of small parts of the lake, and the plaintiff is entitled to an injunction against the continuance of the trespass. There is no reason for a court of equity to be reluctant to lend its aid to prevent a trespass of the character here involved.

It has been assumed for the purpose of the foregoing discussion that there is some merit in the defendants' claim that the deeds by the common grantor conveyed land under water to the center of the lake. But, upon the face of the deeds, it might well be held as a matter of law, as the plaintiff-respondent argues, that the deeds are unambiguous and that they do not convey any lands beyond the shore of the lake. However, even if it is assumed that the language is ambiguous, the most that can be claimed is that the door is open for the admission of parol evidence as to the intention of the parties to the deeds. There is certainly no justification for holding as a matter of law that the language of the deeds must necessarily be construed as conveying land under water to the center of the lake.

The case of *Hammel* v. *Camp Ranger, Inc.* (275 App. Div. 23, 25, affd. 300 N. Y. 602) upon which the defendants rely, held that parol evidence was admissible to clear up the ambiguity there involved. In the *Hammel* case, the description ran " to Pleasant Pond low water mark, thence * * * along said Pleasant Pond shore * * *. The said premises to run along the said Pleasant Pond and to run to the low water mark thereof ". It was held, in the light of the circumstances under which the property had been conveyed and the course of conduct of the parties thereafter, and other evidence of intention before

the court, that this language included the land under water. In the deeds here under consideration there is no reference in the descriptions to " running along the lake ". The descriptions run specifically to the shore and along the shore at low water mark. Furthermore, the deeds each contain a statement of the extent of the area conveyed, a limitation which tends to exclude the land under water. It might well be held, under the long line of cases cited in the *Hammel* opinion, that the deeds here in question are free from ambiguity, and that, as a matter of law, they do not include the land under water beyond the low water mark.

But, as I have indicated, even if the language of the deeds were regarded as ambiguous, the ambiguity would have to be resolved by an inquiry into the intention of the parties. No evidence upon that subject was offered by the defendants and since the defendants did not even urge, upon the trial, the interpretation of the deeds which they now advance, the plaintiff had no opportunity to offer any evidence on the subject. Whatever evidence can be found in the record upon this point tends to support the plaintiff's interpretation of the deeds rather than the defendants'. Morrison, the common grantor, apparently did not regard the conveyances as including any land under water because, when he subsequently conveyed to the plaintiff's predecessor in title, he conveyed the uplands " Together with all the land covered by the waters of White Lake * * * not heretofore conveyed to D. B. Kinne or to the party of the second part ". The common grantor had previously conveyed the cove on the westerly side of the bottom part of the inverted " L " to Kinne and he had conveyed to the grantee, the plaintiff's predecessor in title, other portions of the lake before making the master conveyance. It will be noted that there was no exception in the deed by the common grantor, referring to any conveyance of land under water by the prior deeds upon which the defendants rely.

So far as the record shows, none of the grantees under the deeds upon which the defendants rely and none of their successors in interest ever claimed that they had acquired title to any land under water by virtue of the language used in the conveyances. On the contrary, it appears that for more than half a century they acquiesced in the claim of the ownership of the bed of the lake by the plaintiff's predecessors in title and by the plaintiff. In fact, it appears that some of the grantees and their successors in interest purchased from the plaintiff and the plaintiff's predecessors, lands under water for a distance

of 200 feet in front of their respective premises, transactions which were wholly inconsistent with the interpretation of the original deeds which is now urged by the defendants.

Insofar as this case turns upon an interpretation of the deeds, we have this peculiar situation: The defendants, who are strangers to the title, urge an interpretation of the deeds which neither the grantor nor the grantees, or their successors in interest, ever advanced.

It further appears that the individual defendants themselves acquiesced in the plaintiff's interpretation of the deeds and asked for, and accepted, licenses from the plaintiff for the use of the waters of the lake during the period from 1940 to 1949. While this is not sufficient to create an estoppel in the absence of a showing by the plaintiff of reliance to its detriment, it indicates that the defendants had acquiesced in the practical construction which the parties to the conveyances had earlier adopted.

The defendants made an abortive attempt in 1949 to acquire an easement covering all the waters of the lake by causing the corporate defendant of which the individual defendants are stockholders to purchase a small parcel of land extending 225 feet into the lake, under a deed which purported to give the grantee an easement for the use of all the waters of the lake. The corporate defendant then attempted to give the benefits of this easement to the individual defendants for the operation of their boat livery businesses from the three other points on the lake, to which reference has been made above. The trial court has found, and a majority of this court has approved the finding, that this attempt was a futile one and that the grantor who had conveyed to the corporate defendant had no easement to convey and that the defendants acquired none. It was in reliance upon this alleged easement, and not upon the basis of any of the claims now asserted, that the defendants declined after 1949 to apply for or accept licenses from the plaintiff.

As a matter of fact, the chain of title relied upon by the defendants to give them the easement is wholly inconsistent with their new claim upon this appeal. The easement is said to have been originally obtained from one Gillespie by deed dated July 17, 1907. Gillespie was one of the intermediate owners in the plaintiff's chain of title. The Gillespie family acquired its title by conveyances from 1873 to 1892, long after the original common grantor, Morrison, had made the conveyances upon the interpretation of which the defendants upon this appeal rely.

Upon the trial, the defendants asserted that in 1907, at the time of the granting of the alleged easement, Gillespie was the owner of all of the bed of the lake, with exceptions not here material, and that he had a right to grant the easement. Gillespie's title to the bed of the lake is now held by the plaintiff. It is thus apparent that the defendants' present contention is in direct conflict with their position upon the trial, since they now claim that, by conveyances made by Morrision back in the 1860's, Morrison lost the title to parts of the bed of the lake and that Gillespie as his successor in interest and the plaintiff as Gillespie's successor, did not acquire title to those parts.

Upon the record as it now stands, this court would be amply justified in affirming the judgment, and in rejecting the new claim, either upon the ground that it had not been presented to the trial court and that it is inconsistent with the defendants' position upon the trial, or upon the ground that, even if it were admitted into the case at this stage, the new claim is without merit. However, if it is believed that the new claim has sufficient merit to warrant further inquiry, the most that can be asked by the defendants is that they be given an opportunity to present it fully upon a new trial. The two elements upon which their claim rests—the interpretation of the deeds in the light of parol evidence, and the effect upon the right to injunctive relief of the interruptions or gaps in the plaintiff's ownership of the bed of the lake which would result from a finding in favor of the defendants on the issue of interpretation—both require a thorough-going inquiry by a trial court. A dismissal of the complaint at this stage is certainly unwarranted.

Finally, it should be noted that the judgment appealed from not only grants an injunction but also adjudicates the plaintiff's title and the defendants' title and disposes of the defendants' claim of an easement. A majority of the court is in agreement that the rejection by the trial court of the defendants' claim of an easement was correct. This phase of the decision ought not to be destroyed, as it would be by a reversal of the judgment and a dismissal of the complaint.

IMRIE, J., concurs with BERGAN, J.; FOSTER, P. J., concurs with BERGAN, J., in part in memorandum; COON, J., concurs with BERGAN, J., and FOSTER, P. J.; HALPERN, J., dissents in opinion.

Judgment reversed, on the law and facts, and in the exercise of discretion, and judgment granted for defendants dismissing the complaint, with costs. The appeal from the order refusing a new trial is dismissed. The order to be entered herein to be settled on notice.